*432
Per Curiam.

R.C. 4123.56(A) identifies four circumstances under which TTC can be terminated:
“In the case of a self-insuring employer, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician’s report, payments may be terminated only upon application and hearing by a district hearing officer * * *. Payments shall continue pending the determination of the matter, however payment shall not be made for the period [1] when any employee has returned to work, [2] when an employee’s treating physician has made a written statement that the employee is capable of returning to the employee’s former position of employment, [3] when work within the physical capabilities of the employee is made available by the employer or another employer, or [4] when the employee has reached the maximum medical improvement.”
For reasons unknown, the parties concentrate on the second criterion, including a vigorous debate over whether a release that is not in writing can satisfy the statute. The parties proceed, unquestionably, under the premise that claimant was released to her former position of employment. This is not the case. Dr. Steele never released claimant to return to her former job. He said she could do light-duty work, and DM, in turn, offered claimant a job purportedly within those restrictions. Claimant’s compensation was, therefore, stopped pursuant to the third criterion, not the second, rendering much of the litigants’ discussion misplaced. The statute requires a written release only when the release is to the former position of employment.
Eventually, the parties refocus their arguments on Dr. Steele’s restrictions and whether the commission properly considered them in denying TTC from January 24 through July 24, 1995. Two reasons were stated for denial:' (1) claimant’s rejection of DM’s job offer, and (2) lack of persuasive evidence of temporary total disability. The commission’s analysis of both is flawed.
In determining that DM’s job was within claimant’s medical capabilities, the DHO relied exclusively on DM’s December 15, 1993 and January 14, 1994 letters. This is problematic for two reasons. First, since these letters do not identify the position offered or describe its duties, it is questionable whether they can be considered offers of suitable employment.
Second, and even more important, the December letter, in acknowledging Dr. Steele’s prohibition against repetitive bending, stooping and kneeling, defined “repetitive” as seven to eight times in an “instance” — an obviously subjective and highly ambiguous time frame. Thus, what DM considered to be non-repetitive could easily exceed Dr. Steele’s limitation of six times per hour.
*433 The problem continues into the May 3, 1994 letter and job description. Its reference to “occasional” bending and kneeling is, again, too vague, and leaves the door open to duties that exceed Dr. Steele’s restrictions.
DM defends its offer by stressing that any deficiency is cured by the May 3, 1994 promise to “work with the physician to modify jobs within given restrictions or limitations.” The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant’s restrictions.
The court of appeals sought clarity in returning the cause to the commission for further consideration, and we agree with this ruling. Neither the DHO (who ignored the May 3, 1994 job description) nor the staff hearing officer (who mentioned it only in passing) addressed the two key questions posed by the job description: (1) What is DM’s definition of “occasional” bending and kneeling? and (2) Does that definition comport with Dr. Steele’s restrictions? As the court of appeals found, there are serious unanswered questions here.
The second flaw in the commission’s order is in its rejection of Steele’s C-84s as unpersuasive. The commission based this conclusion on Dr. Steele’s deposition testimony, presumably believing that he had repudiated his earlier C-84 declaration of an inability to return to the former position of employment. Dr. Steele, however, never testified that claimant could return to her former job. He said only that claimant could return to modified light duty, and actually reaffirmed that claimant could not resume her previous duties.
Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Douglas, Resnick, F.E. Sweeney, Pfeifer and Lundberg Stratton, JJ., concur.
Moyer, C.J., and Cook, J., concur in part and dissent in part.