DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Gracie Ganu, filed an original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating her temporary total disability ("TTD") compensation. The basis for the commission's order was that relator had refused to accept a good-faith job offer from respondent Willow Brook Christian Communities ("Willow Brook") that was within her capabilities and restrictions to perform.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has rendered a decision and recommendation, including comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate has recommended that this court issue a writ of mandamus ordering the commission to vacate its order terminating relator's TTD compensation because the order was based in part upon a flawed medical report defining relator's work restrictions. Respondents Willow Brook and the commission have filed separate objections to the magistrate's decision. The matter is now before this court for independent review.
 {¶ 3} The commission's objection is limited to one aspect of the magistrate's decision, and the commission otherwise acquiesces to issuance of a writ in this matter. The sole aspect of the decision to which the commission objects is the magistrate's reference to Ohio Adm. Code 4121-3-32(B)(1) as a controlling administrative code section in this matter. Because that section refers to termination of TTD without a hearing, and in this case termination occurred after hearing, the commission asserts that Ohio Adm. Code 4121-3-32(B)(2) is controlling.
 {¶ 4} The pertinent regulatory language is as follows:
(B)(1) Temporary total disability may be terminated by a selfinsured employer or the bureau of workers' compensation in the event of any of the following:
* * *
(b) The employee's treating physician finds that the employee is capable of returning to his former position of employment or other available suitable employment.
* * *
(2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
* * *
(d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 5} This court has previously held that the standard and evidence to be considered when terminating TTD pursuant to the claimant's refusal to accept an offer of employment does, in fact, vary depending on whether the termination of TTD is pursuant to unilateral termination without a hearing, or after an evidentiary hearing before the commission's hearing officer. Where the termination is unilateral, the criteria under Ohio Adm. Code 4121-3-32(B)(1) is that termination is proper only where the offer of employment falls within the restrictions established by the "treating physician"; the "treating physician" is defined for this section as the "attending physician of record on the date of the job offer." Ohio Adm. Code 4121-3-32(A)(4). "In contrast, when the matter is being decided in an evidentiary hearing, the hearing officer may terminate TTD compensation upon a finding `that the employee has received a written job offer of suitable employment.' Ohio Adm. Code4121-3-32(B)(2)(d). The hearing officer may rely on any medical evidence it finds persuasive, whereas the employer may unilaterally terminate TTD only when the treating physician has made the finding of suitability."State ex rel. Bloom v. JTM Provisions Co., Inc., Franklin App. No. 02AP-1013, 2003-Ohio-2697, at ¶ 51.
 {¶ 6} We accordingly find that the objection of the commission to the magistrate's decision in this case is well-taken, and the magistrate's decision is adopted as to its reasoning and recommendation, but modified only to the extent necessary to reflect the above-standard for TTD. Application of the standard to this case does not lead to a different result.
 {¶ 7} The respondent employer in this case, Willow Brook, has also filed objections but without articulating more than was already expressed and addressed by the magistrate in the initial briefs. As such, respondent Willow Brook tends to reargue contentions that were properly addressed by the magistrate, and thus its objections are not well-taken and are overruled.
 {¶ 8} Having addressed respondents' objections, the court finds that the magistrate has properly discerned the pertinent legal issues and applied the appropriate law thereto, with the exception set forth above. Having completed our independent review, we find no further error in either the magistrate's decision or analysis and, accordingly, pursuant to Civ.R. 53(E)(4)(b), we hereby adopt the magistrate's decision, as modified, as our own, including findings of fact and conclusions of law rendered therein, grant the requested writ, and order the Industrial Commission of Ohio to vacate its order terminating relator's TTD compensation.
Objections sustained in part and overruled in part; writ granted.
Klatt and Sadler, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.{PRIVATE }
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Gracie Ganu, :
 Relator, :
v. : No. 04AP-331
Industrial Commission of Ohio and : (REGULAR CALENDAR)
Willow Brook Christian Communities, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on July 29, 2004 Heinzerling Goodman, LLC, and Jonathan H. Goodman, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Gibson Robbins-Penniman, and J. Miles Gibson, for respondent Willow Brook Christian Communities.
 IN MANDAMUS {¶ 9} Relator, Gracie Ganu, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated her temporary total disability ("TTD") compensation on the basis that she has refused to accept a good-faith job offer within her restrictions as offered by respondent Willow Brook Christian Communities ("employer").
Findings of Fact:
 {¶ 10} 1. Relator sustained a work-related injury on October 23, 2003, while she was employed as a nursing assistant. Relator was initially seen and treated at St. Ann's Hospital that same day complaining of discomfort and/or low back and left hip area pain. The hospital diagnosis was "Sprain — lumbosacral."
 {¶ 11} 2. Relator began treating with Anne Marie Beinecke, D.C., who issued a report dated October 31, 2003, and listed relator's conditions as the following: "lumbar sprain/strain and * * * left hip sprain/strain * * * muscle spasms." Dr. Beinecke recommended treatment and indicated that relator would be taken off work for another two weeks.
 {¶ 12} 3. By letter dated October 27, 2003, the employer notified the Ohio Bureau of Workers' Compensation ("BWC") that it would provide full wage continuation to relator in lieu of compensation through the BWC.
 {¶ 13} 4. By order dated November 10, 2003, the BWC issued an order allowing relator's claim for: "sprain hip thigh nos."
 {¶ 14} 5. On November 17, 2003, Dr. Beinecke completed a C-84 certifying that relator was temporarily and totally disabled due to the condition of left hip/thigh sprain/strain from October 31, 2003 through an estimated return-to-work date of December 10, 2003. Dr. Beinecke later extended the estimated return-to-work date to February 20, 2004.
 {¶ 15} 6. Dr. Beinecke referred relator to Robert H. Perkins, M.D., for a consultation. Dr. Perkins noted that relator walked with an antalgic gait on the left side with a severe list towards the right, that her lumber range of motion was significantly restricted secondary to her low back pain, that she had significant tenderness over the lumbar paraspinals on the left side as well as over the left SI joint. Dr. Perkins noted that straight leg raising caused low back pain and pain along her lateral hip and thigh region. Dr. Perkins noted the following impression: "[l]umbar strain and sprain * * * [l]eft hip sprain * * * [l]eft lower limb pain with some evidence of radicular symptoms." Dr. Perkins opined that the condition of lumbar strain/sprain should be an additional allowed condition in the claim as relator has had pain in this region ever since the injury and did not have pain prior to that. He further recommended an MRI of the lumbar spine, medication, and treatment.
 {¶ 16} 7. On December 12, 2003, the matter was heard before a district hearing officer ("DHO"). The DHO noted that relator's claim had previously been allowed for: "sprain hip and thigh, left." Based upon the October 23, 2003 report from St. Ann's Hospital, as well as the reports of Dr. Beinecke dated October 31 and December 15, 2003, the DHO ordered that the claim be allowed for: "left hip sprain and lumbar sprain." The DHO also ordered TTD compensation be paid from October 31, 2003 and to continue based upon the submission of medical evidence and noted that the employer was paying wage continuation in lieu of TTD compensation. The DHO relied upon the C-84's dated November 17 and December 10, 2003, for the payment of TTD compensation.
 {¶ 17} 8. Thereafter, on January 14, 2004, relator was examined by Christopher Holzaepfel, M.D., at the request of the employer. Dr. Holzaepfel noted that the allowed conditions were sprain left hip and thigh and that the contested conditions were also sprain left hip and thigh. Based upon his examination, Dr. Holzaepfel concluded that relator did not sustain a left hip sprain/strain as a result of the industrial injury on October 23, 2003. As such, Dr. Holzaepfel concluded that relator's claim should not be allowed for sprain/strain of the left hip. In response to the question of whether or not relator would be able to work with or without restrictions, Dr. Holzaepfel noted that since he did "not believe that the condition of sprained left hip and thigh should be allowed * * * there are no restrictions on Ms. Ganu returning to employment." However, in spite of the fact that Dr. Holzaepfel found that relator had no restrictions due to the allowed conditions since he did not believe those allowed conditions existed, he indicated that relator would have the following restrictions on her ability to be employed:
Based on conditions that are not the subject of this examination I do feel that Ms. Ganu can return to a light duty type of employment that would be mainly desk type of work answering phones, etc. She would be limited to sitting for one hour at a time and also limited to no more than 15 minutes of standing at one time. Clearly, she could not return to her prior position as a nurse's aide which would require lifting, twisting, squatting, etc. that she is clearly unable to perform at this point. These limitations are not however the result of the allowed conditions of this claim.
 {¶ 18} 9. Dr. Beinecke completed another C-84 dated January 26, 2004, certifying relator as temporarily totally disabled through an estimated return-to-work date of March 20, 2004.
 {¶ 19} 10. By letter dated February 12, 2004, and in reliance upon the January 14, 2004 report of Dr. Holzaepfel, the employer offered relator a light-duty position beginning February 17, 2004. The offer indicated that relator would not have to lift more than ten pounds, and would not be asked to stoop, bend, or stand for prolonged periods of time, or sit for prolonged periods of time. The position was for a light-duty nursing assistant and included a list of 13 duties, four of which had "x's" noted by them. It is unclear whether those four "x's" represent what relator will or will not be required to do.
 {¶ 20} 11. The employer's appeal from the prior DHO order was heard before a staff hearing officer ("SHO") on February 19, 2004. The SHO noted that relator's claim remains allowed for: "left hip sprain and lumbar sprain." The SHO noted that the employer was objecting to continued payment of TTD compensation beyond February 17, 2004, on the basis that the employer had made a good-faith job offer to relator which was to begin February 17, 2004, to which relator never responded. The SHO noted that the job offer had been "based on the work restrictions recommended by an independent physician evaluation performed" on January 14, 2004. The SHO con-cluded that the employer had made a good-faith job offer within the restrictions recommended by the January 14, 2004 evaluation of Dr. Holzaepfel, and that relator's refusal to accept this job offer barred her entitlement to TTD compensation from February 17, 2004 forward.
 {¶ 21} 12. Relator's appeal was refused by order of the commission mailed March 13, 2003.
 {¶ 22} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} Relator raises several arguments in support of her contention that the commission abused its discretion by denying her TTD compensation after February 17, 2004, based upon her alleged refusal to accept a good-faith job offer made by her employer. For the following reasons, this magistrate concludes that the commission did abuse its discretion in this particular case.
 {¶ 25} There are four reasons why this magistrate believes that the commission has abused its discretion. First, the commission determined that relator had refused a good-faith job offer which the employer made based upon the restrictions given by Dr. Holzaepfel. However, in reviewing Dr. Holzaepfel's report, this magistrate specifically notes that Dr. Holzaepfel did not consider all of the allowed conditions when he rendered his opinion. Dr. Holzaepfel specifically opined that relator did not sustain a left hip sprain/strain as a result of the October 23, 2003 industrial injury because her MRI was normal and his physical examination did not indicate any injury to her hip. Based upon his conclusions that the condition of sprained left hip and thigh should not be allowed, Dr. Holzaepfel indicated that relator had no restrictions in returning to employment. He further opined that her symptoms were not related to a left hip sprain/strain. As such, this magistrate specifically finds that Dr. Holzaepfel did not examine her for all the allowed conditions as he indicated that he did not believe that relator had sustained any injury at all on October 23, 2003. His report cannot constitute "some evidence" upon which the commission could rely.
 {¶ 26} Second, the magistrate notes that the SHO indicated that Dr. Holzaepfel performed an "independent physician evaluation." The record indicates otherwise. Relator was sent to Dr. Holzaepfel at the request of the employer. Dr. Holzaepfel examined relator at the employer's request and did not provide an independent physician evaluation.
 {¶ 27} Third, this magistrate finds that, construing R.C. 4123.56 and Ohio Adm. Code 4121-3-32 in favor of claimants pursuant to R.C. 4123.95, a job offer made by an employer based upon restrictions imposed on a claimant by a physician of the employer's choosing cannot reasonably constitute a "good-faith job offer" which a claimant must accept or forfeit TTD compensation.
 {¶ 28} R.C. 4123.56(A) provides that:
* * * [TTD compensation] shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement. * * *
 {¶ 29} Supplementing R.C. 4123.56 is Ohio Adm. Code 4121-3-32. Specifically, Ohio Adm. Code 4121-3-32(B) provides, in pertinent part, as follows:
(1) Temporary total disability may be terminated by a selfinsured employer or the bureau of workers' compensation in the event of any of the following:
* * *
(b) The employee's treating physician finds that the employee is capable of returning to his former position of employment or otheravailable suitable employment.
(Emphasis added.)
 {¶ 30} "Treating physician" is defined under Ohio Adm. Code4121-3-32(A)(4) to mean:
* * * [T]he employee's attending physician of record on the date of the job offer, in the event of a written job offer to an employee by an employer. * * *
 {¶ 31} This magistrate finds that it is completely untenable and unreasonable to expect claimants whose treating physicians have certified them as temporarily and totally disabled to accept a job offer made by an employer based upon restrictions made by a physician to whom the employer referred the claimant for an evaluation. Instead, the only reasonable interpretation is that where an employer makes a written job offer to a claimant which is based upon restrictions which the claimant's treating physician has indicated, then that is a "good-faith job offer" and, in the event that the claimant refuses the job offer, then claimant forfeits their right to receive TTD compensation. Here, the commission terminated relator's TTD compensation as of February 17, 2004, the day the employer's written job offer became effective. It is unreasonable for a claimant to accept a job offer without their own physician's approval.
 {¶ 32} Fourth, this job offer did not comply with State ex rel. Coxsonv. Dairy Mart Stores of Ohio, Inc. (2000), 90 Ohio St.3d 428, or State exrel. Professional Restaffing of Ohio, Inc. v. Indus. Comm.152 Ohio App.3d 245, 2003-Ohio-1453, because it did not sufficiently describe the duties the claimant was being asked to perform. At the hearing, the SHO asked a representative of the employer to address relator's concerns that the duties would actually be within her restrictions. Ms. Frey essentially testified that the employer would modify the job duties in any way necessary to accommodate relator. InCoxson, the court noted that: "The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TT[D], it must be clear that the job is indeed within claimant's restrictions." Id. at 433. This magistrate finds the job offer was not clear that the position offered was within relator's restrictions.
 {¶ 33} In the present case, because Dr. Holzaepfel did not examine relator for all of the allowed conditions and specifically indicated that he did not believe relator had sustained any injury on the date of her accident, and because Dr. Holzaepfel was not an independent examiner but was, instead, examining relator on behalf of the employer, this magistrate specifically concludes that the commission abused its discretion in relying on his report to find that the employer made a good-faith job offer to relator which relator refused and then thereby terminating her TTD compensation.
 {¶ 34} Based on the foregoing, this magistrate finds that relator has demonstrated that the commission abused its discretion by finding that the employer had made a good-faith job offer because that job offer was based upon restrictions made by Dr. Holzaepfel whose report does not constitute some evidence upon which the commission could rely because he did not examine relator for all the allowed conditions, did not accept that relator had sustained an injury on that date, was not the "treating physician," and had examined relator on behalf of the employer and the job offer was not sufficiently clear that it was within relator's restrictions. As such, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its order terminating relator's TTD compensation on that basis, and ordering the commission to reinstate the award.