THE STATE EX REL. GANU ET AL., APPELLEES, *v.* WILLOW
BROOK CHRISTIAN COMMUNITIES, APPELLANT.

[Cite as *State ex rel. Ganu v. Willow Brook Christian Communities,* 108 Ohio St.3d 296, 2006-Ohio-907.]

(No. 2005–1116—Submitted November 29, 2005—Decided March 15, 2006.)

**Per Curiam.**

{¶ 1} This is an appeal from the grant of a writ of mandamus ordering the Industrial Commission of Ohio to vacate an order terminating temporary total disability compensation. We affirm.

{¶ 2} On October 23, 2003, appellee Gracie Ganu was injured while lifting a patient at an extended-care facility operated by appellant, Willow Brook Christian Communities. A workers' compensation claim was allowed for "sprain hip and thigh, left." Ganu then requested temporary total disability compensation, and Willow Brook responded by continuing wages in lieu of compensation, which is statutorily acceptable.

{¶ 3} On December 18, 2003, the Industrial Commission of Ohio ordered that Ganu's claim be amended to include "left hip sprain and lumbar sprain." Approximately one month later, Ganu was examined at Willow Brook's request by Dr. Christopher Holzaepfel. Dr. Holzaepfel did not accept the allowance of "left hip sprain" and opined that Ganu did not sustain such an injury as a result of the October 23, 2003 accident. His report also did not refer to the allowed lumbar

sprain. When asked to list any medical restrictions on Ganu's ability to work, he wrote:

{¶ 4} "I do not believe that the condition of sprained left hip and thigh should be allowed. Therefore based on this condition, there are no restrictions on Ms. Ganu returning to employment.

{¶ 5} "Based on conditions that are not the subject of this examination[,] I do feel that Ms. Ganu can return to a light duty type of employment that would be mainly desk type of work[,] answering phones, etc. She would be limited to sitting for one hour at a time and also limited to no more than 15 minutes of standing at one time. Clearly, she could not return to her prior position as a nurse's aide which would require lifting, twisting, squatting, etc. that she is clearly unable to perform at this point. These limitations are not however the result of the allowed conditions of this claim."

{¶ 6} Dr. Anne Marie Beinecke, Ganu's attending physician, certified on November 17, 2003, and continued to certify during the relevant periods, that Ganu was unable to return to her former position of employment.

{¶ 7} On February 12, 2004, Willow Brook offered Ganu a light-duty job based on Dr. Holzaepfel's restrictions. Its proposed "Agreement for Temporary Light Duty Program Classification" stated:

{¶ 8} "In accordance with the restrictions and limitations provided by your treating physician as a result of your work-related injury, we are offering you a position under the Light Duty Program (LDP). Your duties will include those detailed on the attached Job Description. Please be reminded that your physician does not want you to:

{¶ 9} "Lift more than 10 pounds

{¶ 10} "Stoop

{¶ 11} "Bend

{¶ 12} "Stand for a prolonged period of time

{¶ 13} "Sit for a prolonged period of time.

{¶ 14} " * * *

{¶ 15} "This agreement shall be in effect until such time as the physician feels that you are physically capable of resuming your regular work, and for a period not to exceed 30 days from the date of this agreement."

{¶ 16} The accompanying job description, titled "LPD Job Description and Release," listed only Ganu's lifting restriction. It specified her new duties as:

{¶ 17} "1) Feed breakfast and lunch in AC dining room

{¶ 18} "2) Fill out AC dining room meal intake book

{¶ 19} "3) Stock hall linens cart

{¶ 20} "4) Stuff medical charts with forms

{¶ 21} "5) File lab work

{¶ 22} "6) Check resident Identification Bands to ensure that all residents have one on

{¶ 23} "7) Stock shower rooms

{¶ 24} "8) Nail care for all residents

{¶ 25} "9) Check sharp containers in men's room and each shower room

{¶ 26} "10) Tidy wheelchair bay area—place soiled linens in appropriate bins

{¶ 27} "11) Clean wheelchairs

{¶ 28} "12) Clean residents['] closets

{¶ 29} "13) Stock resident rooms with personal items."

{¶ 30} Ganu refused to accept this offer, prompting Willow Brook to seek termination of compensation under R.C. 4123.56(A). A commission staff hearing officer found in Willow Brook's favor:

{¶ 31} "[T]he employer submitted a written light duty job offer to the claimant that was to begin on 02/17/2004. The claimant never responded to this job offer. The job offer was based on the work restrictions recommended by an independent physician evaluation performed on 01/14/2004.

{¶ 32} "After reviewing the job offer, its restrictions, and the duties of the job offer, the Staff Hearing Officer finds that this was a good faith job offer within the restrictions recommended by the 01/14/2004 evaluation and claimant's refusal to accept this job offer bars her entitlement to temporary total benefits from 02/17/2004 forward.

{¶ 33} "Claimant's counsel raised concerns that some of the job duties were beyond claimant's restrictions. However, based on testimony of Ms. Frey, on behalf of the employer, that modification would be made to specify job duties such that all job duties would be in accordance with all restrictions, the Staff Hearing Officer is satisfied that this job offer did comply with the listed restrictions and claimant's refusal to accept [the] offer precludes temporary total benefits as of 02/17/2004.

{¶ 34} "The claimant stated [that] her physician reviewed the job offer and told her she couldn't do this job. However, the claimant did not submit documentation of that opinion[;] therefore, there is no independent verification that claimant's doctor stated this job offer was beyond claimant's capacity."

{¶ 35} Further appeal was refused.

{¶ 36} Ganu filed a complaint for a writ of mandamus in the Court of Appeals for Franklin County. The court of appeals, through its magistrate, found that the commission abused its discretion in terminating compensation. It found that Dr. Holzaepfel's report could not properly form the basis of a good-faith job offer because he did not consider all allowed conditions. It also held that the enumerated job duties did not meet the specificity requirements of *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.* (2000), 90 Ohio St.3d 428, 739 N.E.2d 324. Accordingly, the court of appeals issued the writ of mandamus, ordering the commission to vacate its order terminating Ganu's temporary total disability compensation.

{¶ 37} This cause is now before this court on appeal as of right.

{¶ 38} R.C. 4123.56(A) and Ohio Adm.Code 4121–3–32 prohibit the payment of temporary total disability compensation after a claimant has refused a good-faith written offer of suitable employment, i.e., work within claimant's medical capacities. Ganu did not accept Willow Brook's light-duty job offer. Thus, the legitimacy of this job offer will determine whether the commission abused its discretion in denying temporary total disability compensation. The court of appeals found that the job offer was unacceptable, and we affirm its judgment.

{¶ 39} Willow Brook's job offer was based on the report of Dr. Holzaepfel, who examined Ganu on Willow Brook's behalf. Dr. Holzaepfel did not consider Ganu's allowed lumbar sprain in addressing her physical restrictions. This omission is fatal pursuant to *State ex rel. Richardson v. Quarto Mining Co.* (1995), 73 Ohio St.3d 358, 652 N.E.2d 1027, which declared that a doctor's report that did not consider all allowed conditions could not support the grant or denial of temporary total disability compensation. It follows, therefore, that such a report cannot support a job offer upon which eligibility for such compensation hinges. A report that cannot directly support compensation denial should not be permitted to do so indirectly.

{¶ 40} Moreover, Dr. Holzaepfel opined that the allowed conditions of "sprain left hip and thigh" had never occurred. This, too, is a fatal flaw. Certainly, a physician is not required to affirm the continued existence of an allowed condition that, in the doctor's opinion, has medically resolved. *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372. A physician, however, must accept that an allowed condition once existed and not disavow its initial allowance as Dr. Holzaepfel did here. *State ex rel. Middlesworth v. Regal Ware, Inc.* (2001), 93 Ohio St.3d 214, 754 N.E.2d 774.

{¶ 41} The court of appeals further found that the job offer did not satisfy the requirements established in *Coxson*. *Coxson* held that a written offer of suitable employment must clearly identify the physical demands of the job and, moreover,

that an offer lacking the requisite clarity could not be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored.

{¶ 42} In his report, Dr. Holzaepfel recommended limiting Ganu to essentially desk work with prohibitions on twisting, squatting, stooping, and bending. Lifting was limited to no more than ten pounds. Sitting and standing were restricted to an hour and a quarter hour, respectively. In the "Agreement for Temporary Light Duty Program Classification," Willow Brook loosely described these latter restrictions as prohibitions against "prolonged" sitting and standing.

{¶ 43} This is problematic under *Coxson,* where the court was troubled by similarly ambiguous terms in a job offer:

{¶ 44} "[T]he December letter, in acknowledging Dr. Steele's prohibition against repetitive bending, stooping and kneeling, defined 'repetitive' as seven to eight times in an 'instance'—an obviously subjective and highly ambiguous time frame. Thus, what [Dairy Mart] considered to be non-repetitive could easily exceed Dr. Steele's limitation of six times per hour.

{¶ 45} "The problem continues into the May 3, 1994 letter and job description. Its reference to 'occasional' bending and kneeling is, again, too vague, and leaves the door open to duties that exceed Dr. Steele's restrictions." Id., 90 Ohio St.3d at 432–433, 739 N.E.2d 324.

{¶ 46} The same problem exists here. Willow Brook's reference to "prolonged" sitting and standing produces comparable concern that Willow Brook's subjective definition of "prolonged" may not comport with the actual limitations placed on Ganu.

{¶ 47} The job duties listed on the "LDP Job Description and Release" also invite scrutiny. The duties to be performed by Ganu were varied. Some of them raise questions, particularly the stocking and cleaning responsibilities. Because only the lifting restriction was listed on the form, the prohibitions against stooping, bending, and standing listed on the light-duty agreement and the ban on twisting and squatting made by Dr. Holzaepfel may not have been considered.

{¶ 48} Willow Brook maintains that any doubts about these duties were addressed by it at the hearing. *Coxson,* however, prohibits verbal qualification, and it is immaterial that the hearing officer was persuaded by Willow Brook's assurances. The point of *Coxson* is that a written offer cannot be supplemented by nonwritten promises.

{¶ 49} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Heinzerling & Goodman, L.L.C., and Jonathan H. Goodman, for appellee Gracie Ganu.

Gibson & Robbins–Penniman and J. Miles Gibson, for appellant.

Jim Petro, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee Industrial Commission of Ohio.