DECISION
{¶ 1} Relator, Peter J. Pabon, has filed an action requesting this court to grant a writ of mandamus to order respondent Industrial Commission of Ohio ("commission") to vacate its order that terminated temporary total disability compensation and to enter an order granting said compensation. *Page 2 
 {¶ 2} This court referred the matter to a magistrate who rendered a decision including findings of fact and conclusions of law. The magistrate decided that a writ of mandamus should be granted requiring the commission to vacate its order that denied temporary total disability compensation and to enter a new order denying the employer's request to terminate such compensation.
 {¶ 3} Respondent commission has filed objections to the magistrate's decision. In its objections, the commission argues that the written offer of employment by respondent Erdie Paper Tube Company was sufficient to meet the requirements of State ex rel. Coxson v. DairyMart Stores, 90 Ohio St.3d 428, 2000-Ohio-188, and State ex rel. Ganu v.Willow Brook Christian Communities, 108 Ohio St.3d 296, 2006-Ohio-907, and further argues that relator was required to exhaust his administrative remedies before filing a writ of mandamus.
 {¶ 4} The offer of employment presented to relator stated in part:
 We have several positions available here for you that we consider light duty. They include operating the Activa cutter, the CM-21 cutter and other pieces of equipment in our secondary operations.
 {¶ 5} This letter does not meet the requirements of Coxson which holds that a suitable offer of employment must clearly identify the position offered along with a description of its duties. Here, the offer of employment merely listed, but did not describe, the duties, and stated the employer's opinion that it was within the relator's capabilities. However, this offer of employment is lacking sufficient specificity and cannot be redeemed by the employer's assertion that the relator was familiar with the jobs offered and would know whether he was able to perform them. Respondent further argues that because the Supreme Court of Ohio set forth new law in Ganu, relator should have been *Page 3 
required to request the commission to exercise its continuing jurisdiction and provide it with an opportunity to apply the new law set forth in Ganu. There is no requirement that the relator request the commission to exercise continuing jurisdiction before bringing an action in mandamus to correct an error in that decision. State ex rel. LappRoofing Sheet Metal Co., Inc. v. Indus. Comm., Franklin App. No. 05AP-950, 2007-Ohio-933. Further, Ganu did not state new law but rather affirmed the court's earlier decision in Coxson.
 {¶ 6} For the foregoing reasons, respondents' objections to the magistrate's decision are overruled. Therefore, this court grants a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its orders of February 19, 2002 and September 18, 2003, and to issue a new order denying the employer's August 24, 2001 motion to terminate temporary total disability compensation.
Objections overruled; writ of mandamus granted.
 BROWN and TYACK, JJ., concur.
BOWMAN, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION {¶ 7} In this original action, relator, Peter J. Pabon, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation effective December 11, 2000, and to enter an order reinstating TTD compensation. *Page 5 
Findings of Fact: {¶ 8} 1. On May 31, 2000, relator sustained an industrial injury while employed as a "paper tube winder" for respondent Erdie Paper Tube Company ("employer"), a state-fund employer. The industrial claim is allowed for "fracture right distal ulna and open wound right elbow," and is assigned claim number 00-417617.
 {¶ 9} 2. On June 7, 2000, relator underwent his second surgery relating to his industrial injury. Relator was paid TTD compensation by the Ohio Bureau of Workers' Compensation ("bureau"). On October 31, 2000, relator was referred by the managed care organization managing his industrial claim, to VoCare Services, Inc. ("VoCare"), for an assessment for vocational rehabilitation.
 {¶ 10} 3. On November 15, 2000, Sandy Dunkle, RN, CRRN, the VoCare case manager assigned to relator's case, wrote to relator's treating physician Roger G. Wilber, M.D.:
 * * * I have done an initial assessment of Mr. Pabon in his home on 11/6/00. I have talked with his foreman and observed several jobs at his place of employment.
 During the initial assessment, Mr. Pabon told me that he functions well with what he has to do. He demonstrated excellent flexion and extension of the right elbow. He admitted to some slight soreness at the wrist for which Dr. Hoyen has already seen him on 11/13/00. He reported being able to lift 25# maximum at this point with the right hand. He reported pretty good grip and grasp strength. The only movement he complained about was resistive motion with the right wrist in flexion. He says he does cooking, cleaning, dishes, vacuuming, driving, and feels he has no real limitations.
 Dr. Hoyen has recommended an MR arthroscopy to rule out TFCC or LT ligament tear. In the meantime, after seeing the jobs available to Mr. Pabon at Erdie Paper Tube, it appears that he could return to work. The employer has several *Page 6 
different light duty jobs which are permanent jobs on any shift. They are as follows:
 [One] Crimping machine — thin metal caps are placed manually on paper tube ends — tubes placed in a bin which feeds the tubes into the metal crimper — tubes are approximately 2# in weight — they then are placed in a box on the floor manually. Full box weighs 20#. Box lifted to palett [sic]. This procedure repeats every 15 minutes. Except for lifting the boxes, the entire operation can be done one handed.
 [Two] Ativa — this job is totally automated — 10# tubes are loaded manually to a bin — machine is programmed to do the rest — it cuts the tubes, drops them in a box under the machine, and stops automatically when the box is filled. Box then put on skid. Probably the heaviest lifting required on this job.
 [Three] Secondary area — tubes 3# each — placed in feeder, cut and dropped all automatic — have to manually set machine by pushing buttons to program the procedure — filled box weighs 25-30# full. Boxes are moved approximately every 5 minutes.
 Each of the above jobs have people working together — there is a buddy system throughout the plant. Will you release Mr. Pabon to any of these jobs? If so, I need a written release stating date released with restrictions if any.
 Does Mr. Pabon need further therapy in the way of work simulation? Any other?
 I am prepared to include further physical rehab in his vocational rehabilitation plan if necessary. The employer is aware of the further investigation of the right wrist. I would appreciate your opinion and recommendations for return to work along with any further rehab needs. In a plan, the two could actually be accomplished together in a gradual return to work program whereby he could work part time and go to rehab. part time and be paid his full time wages. The employer assured me that there was plenty of work on other jobs, so that Mr. Pabon would not have to return to the job on which he was injured. *Page 7 
 {¶ 11} 4. On December 4, 2000, Dr. Wilber completed a C-84 releasing relator to return to work on December 11, 2000 "with single arm restriction."
 {¶ 12} 5. By letter dated December 11, 2000, the employer informed relator:
 We have been informed by your Worker's [sic] Compensation case worker, Sandy Dunkel [sic], that you have been released for light duty work effective today, December 11, 2000. We have several positions available here for you that we consider light duty. They include operating the Activa cutter, the CM-21 cutter and other pieces of equipment in our Secondary operations.
 Please call me so that we may discuss these options and get you back to work just as soon as possible.
 {¶ 13} 6. Apparently, relator did not respond to the employer's December 11, 2000 letter.
 {¶ 14} 7. On December 12, 2000, Sandy Dunkle issued a "Vocational Rehabilitation Closure Report" on bureau form RH-21. Dunkle's report states:
 A letter was written and faxed to Dr. Wilber, the [physician of record], on 11/15/00, requesting recommendations for the elements of a vocational rehabilitation plan to include occupational therapy if needed, work simulation if needed, and the possibility of return to work light duty. Three job descriptions for light duty were included in the letter of 11/15/00, after this case manager visited Erdie Paper Tube Co. and was told that they would [comply with] any restrictions necessary. A request was made for release to return to work with honor any needed restrictions. [Sic] On 12/7/00, I received a copy of a C-84 from Dr. Wilber releasing Mr. Pabon to return to work [sic] one handed work on 12/11/00. I spoke with Mr. Pabon regarding the release to return to work. He informed me that he did not want to return to work at the current employer. He stated that he had considered quitting this job before the injury and that there were personal issues which cause him not to want to return. He was informed of the consequences of not taking a restricted duty job since he was released by the [physician of record] and the employer can give him one handed work. He was also informed that he would be able to attend any *Page 8 
therapies and medical treatment needed and would be allowed time away from work if necessary. Since Mr. Pabon is not willing to accept the restricted duty offered, and says he has a plan of his own to pursue, this case manager will place closure on his vocational rehabilitation case with VoCare Services, Inc. A letter was mailed to Mr. Pabon informing him of his case closure effective 12/12/00.
 {¶ 15} 8. On August 24, 2001, citing Dunkle's December 12, 2000 closure report, the employer moved to terminate TTD compensation. The motion alleged "that claimant has refused to accept suitable light duty employment."
 {¶ 16} 9. Following a January 4, 2002 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective December 11, 2000. The DHO's order explains:
 The District Hearing Officer orders temporary total disability compensation be terminated on 12-11-00, as claimant abandoned his job by refusing to respond, report and/or attempt a good faith light duty job offered by the employer within the restrictions imposed by claimant's treating physician at that time, Dr. Wilbur [sic].
 This order is based on the 12-11-00 letter from the employer and Dr. Wilbur's [sic] light duty restriction (12-7-00).
 {¶ 17} 10. Relator administratively appealed the DHO's order of January 4, 2002.
 {¶ 18} 11. Following a February 19, 2002 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 01/04/2002, is modified to the following extent. Therefore, the IC-12, filed 01/22/2002 is denied.
 Staff Hearing Officer grants employer's request to terminate temporary total disability compensation effective 12/11/2000. Staff Hearing Officer finds that injured worker abandoned his employment by failing to respond to employer's offers of light duty work within the restriction delineated by the physician of record. *Page 9 
 This order is based on the 11/15/2000 letter from Advocare, the 12/11/2000 letter of the employer, and the C-84 from Dr. Wilber signed 12/04/2000.
 {¶ 19} 12. On March 28, 2002, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 19, 2002.
 {¶ 20} 13. On May 23, 2003, citing this court's decision in State exrel. Professional Restaffing of Ohio, Inc. v. Indus. Comm.152 Ohio App.3d 245, 2003-Ohio-1453, relator moved the commission to exercise continuing jurisdiction over its SHO's order of February 19, 2002 terminating TTD compensation.
 {¶ 21} 14. Following a September 18, 2003 hearing, an SHO issued an order denying relator's May 23, 2003 motion. The SHO's order explains:
 The claimant's C-86 motion filed 05/23/2003 requesting payment of Temporary Total Disability benefits from 12/12/2000 through 11/05/2001 is denied.
 This period was previously denied by the District Hearing Officer and the Staff Hearing Officer orders of 01/04/2002 and 02/19/2002 for the reason the claimant refused to accept the employer's offer of light duty work.
 The claimant, in the C-86 motion at issue, requests the Industrial Commission to vacated [sic] those orders pursuant to O.R.C. 4123.52 and order that period paid based upon the holding in [State] ex rel. Professional Restaffing of Ohio, Inc. v. I.C. 152 Ohio App.3d 245 (2003).
 The Staff Hearing Officer denies the request for the reason the facts in the claim at bar are distinguishable from Professional [Res]taffing.
 The holding in Professional [Res]taffing states that an "offer of suitable employment must identify the portion offered and generally describe the duties required so that a [claimant, his or her physician, and/or the commission can determine whether the required duties are consistent with the medical restrictions." *Page 10 
 In the case at bar the only restrictions were to the right hand/arm. Dr. Wilbur [sic], the claimant's physician of record, stated the claimant could "return to work with single arm restrictions."
 On 12/11/2000, the employer identified jobs including "operating the Activacutter, the CM-21 cutter and other pieces of equipment in our secondary operations."
 On 12/12/2000, the claimant received a letter from Sandy Dunkle at Advocare, which identified that the claimant was released by Dr. Wilbur [sic] to light duty, one are [sic] restriction.
 The Staff Hearing Officer finds that the listing of specific jobs that are identified by the employer as one armed light duty falls within the holding of Professional [Res]taffing.
 The claimant did not present any evidence that these jobs are not one armed positions.
 The claimant's physician of record, Dr. Wilbur [sic], released claimant to one armed work. This is a fairly simple restriction to understand as though the claimant did sustain a serious injury, it was fortunately limited to his right arm.
 No other extremities were effected. Thus any job that would require one arm operation would be within his restrictions. If the jobs identified by the employer to the claimant in the written correspondence was not within this restriction, Temporary Total would be appropriate.
 But since the jobs were identified and known to the claimant, he would have had knowledge of them due to the fact he previously worked in this factory. He did not dispute the restrictions of the jobs nor state at the time he was unaware of the duties entailed in the jobs identified. Thus it appears all concerned were aware of the jobs and duties required and as the claimant did not accept them and gave no legally sufficient reason for not accepting them, the request for Temporary Total from 12/12/2000 through 11/05/2001 is denied. *Page 11 
 {¶ 22} 15. On March 15, 2006, the Supreme Court of Ohio issued its decision in State ex rel. Ganu v. Willow Brook ChristianCommunities, 108 Ohio St.3d 296, 2006-Ohio-907.
 {¶ 23} 16. On December 22, 2006, relator, Peter J. Pabon, filed this mandamus action.
Conclusions of Law: {¶ 24} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 25} R.C. 4123.56(A) provides that payment of TTD compensation shall not be made "when work within the physical capabilities of the employee is made available by the employer or another employer."
Supplementing the statute, Ohio Adm. Code 4121-3-32 states:
 (A) The following provisions shall apply to all claims where the date of injury or the date of disability in occupational disease claims accrued on or after August 22, 1986. The following definitions shall be applicable to this rule:
 * * *
 (3) "Suitable employment" means work which is within the employee's physical capabilities.
 * * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy *Page 12 
of the written offer must accompany the employer's initial filing.
 (B)
 * * *
 (2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
 * * *
 (d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 26} In State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.
(2000), 90 Ohio St.3d 428, the commission denied Marlyne Coxson her request for TTD compensation on grounds that she had refused her employer's offers of light-duty employment. The Coxson court held that the letters offering employment could not be considered offers of suitable employment because (1) the letters did not identify the position offered or describe its duties, and (2) some of the terms used by the employer in its letters were ambiguous or vague.
 {¶ 27} The Coxson court rejected the employer's position that any deficiency with the letters was cured by its written promise to "work with the physician to modify jobs within given restrictions or limitations." Id. at 433. The Coxson court stated:
 * * * The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions.
Id. *Page 13 
 {¶ 28} In Professional Restaffing, supra, this court had occasion to apply the Coxson requirements. This court stated:
 Here, relator offered claimant a "left-handed position" without identifying the specific position or the duties required of that position. Although claimant's medical restrictions relate to the use of his right hand, the job offer extended by relator is not specific enough to allow claimant, his doctor, or the commission to assess whether the job is, in fact, within claimant's restrictions. As noted by Coxson, for a job offer to be sufficient to terminate TTD compensation, it must be clear that the job is indeed within claimant's restrictions. The only way to assess this is to know the position being offered and the general nature of the duties required of the position.
Id. at ¶ 4.
 {¶ 29} In Ganu, supra, the employer offered Gracie Ganu a light-duty job based upon the medical restrictions of Dr. Holzaepfel who examined Ganu at the request of the employer. Because Ganu did not accept the offer, the commission terminated TTD compensation on the employer's motion.
 {¶ 30} In Ganu, the court found that Dr. Holzaepfel's report could not properly form the basis for a good-faith job offer because he failed to consider all allowed conditions. The court also found that the job offer failed to meet the specificity job requirements under Coxson.
 {¶ 31} The Ganu court summarizes the Coxson holding:
 * * * Coxson held that a written offer of suitable employment must clearly identify the physical demands of the job and, moreover, that an offer lacking the requisite clarity could not be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored.
Id. at ¶ 41. *Page 14 
 {¶ 32} Here, relator claims that the employer's December 11, 2000 letter, which the commission cites as the employer's written job offer, fails to meet the specificity requirements of Coxson and Ganu. Seemingly conceding that the employer's December 11, 2000 letter, by itself, fails to meet the Coxson and Ganu requirements, the commission argues that the employer's December 11, 2000 letter meets the Coxson and Ganu
requirements because it can be read together with Dunkle's November 15, 2000 letter to Dr. Wilber.
 {¶ 33} The problem with the commission's argument is there is no evidence in the record that relator had been provided a copy of the November 15, 2000 letter or was even aware of its existence at the time he received the employer's December 11, 2000 letter.
 {¶ 34} The magistrate notes that the employer's December 11, 2000 letter makes no mention of the November 15, 2000 letter, and the November 15, 2000 letter does not indicate a copy was sent to relator. Under such circumstances, the presumption is that relator was not aware of the November 15, 2000 letter during the relevant period.
 {¶ 35} As this court states in Professional Restaffing: "the job offer extended by relator is not specific enough to allow claimant, his doctor, or the commission to assess whether the job is, in fact, within claimant's restrictions." Id. at ¶ 4.
 {¶ 36} The commission's argument in effect says that it is not necessary that the claimant himself be informed of the duties of the position being offered. Yet, it is the claimant who bears the consequences of refusing the employer's offer. In the magistrate's view, the commission's argument is not supported by the case law discussed above. *Page 15 
 {¶ 37} Moreover, the explanation in the SHO's order of September 18, 2003, for the commission's refusal to exercise continuing jurisdiction in light of Professional Restarting, fails to justify upholding the SHO's order of February 19, 2002.
 {¶ 38} In the SHO's order of September 18, 2003, the commission states:
 But since the jobs were identified and known to the claimant, he would have had knowledge of them due to the fact he previously worked in this factory. He did not dispute the restrictions of the jobs nor state at the time he was unaware of the duties entailed in the jobs identified. Thus it appears all concerned were aware of the jobs and duties required[.]
 {¶ 39} The above-quoted portion of the order is clearly inconsistent with the holdings in Coxson, Ganu and Professional Restarting. The commission cannot presume that relator had knowledge of the duties relating to the operation of the machines listed in the employer's December 11, 2000 letter where such presumption is premised solely on the fact that relator had worked in the factory. Moreover, the above-quoted portion of the order places a burden upon the claimant to show that the offered jobs do not meet his medical restrictions.Coxson and Ganu place the burden upon the employer to show that the offered job meets the claimant's medical restrictions.
 {¶ 40} In the magistrate's view, the SHO's order of September 18, 2003, constitutes an abuse of discretion in failing to exercise continuing jurisdiction over the SHO's order of February 19, 2002, which contains a clear mistake of law in light of the decisions inCoxson and Professional Restarting.
 {¶ 41} Here, the commission further claims that relator should be denied relief in mandamus because he challenges the SHO's order of February 19, 2002, rather than the SHO's order of September 18, 2003, which the commission characterizes as the final order. Because the commission concludes here that the February 19, 2002 order is not a *Page 16 
final order, it thus argues that relator has challenged the wrong order and, on that basis, relief in mandamus should be denied.
 {¶ 42} It seems quite clear to this magistrate that relator is challenging the commission's decisions that have repeatedly denied him TTD compensation beginning December 11, 2000, based upon the employer's job offer. It matters little which order is deemed to be the final one.
 {¶ 43} The commission further claims that this mandamus action is premature because relator did not choose to move the commission to exercise continuing jurisdiction based upon Ganu. The commission's claim lacks merit.
 {¶ 44} There is no requirement that relator move the commission to exercise continuing jurisdiction over an order before he brings an action in mandamus to correct that order. State ex rel. Lapp Roofing Sheet Metal Co., Inc. v. Indus. Comm., Franklin App. No. 05AP-950,2007-Ohio-933.
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's orders of February 19, 2002 and September 18, 2003, and in a manner consistent with this magistrate's decision, enter new orders denying the employer's August 24, 2001 motion to terminate TTD compensation. *Page 1