DECISION
{¶ 1} Relator, Mindy M. Gordon, filed this original action, which requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 2 
vacate its order denying her temporary total disability ("TTD") compensation beginning August 3, 2006, and to enter an order granting TTD compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Specifically, the magistrate rejected relator's contention that the July 27, 2006 letter from her employer, The Holland Group of Tennessee, Inc., failed to clearly identify the physical demands of the restricted-duty job being offered. No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
 McGRATH, P.J., and SADLER, J., concur. *Page 3 
 APPENDIX A {¶ 4} In this original action, relator, Mindy M. Gordon, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 4 
vacate its order denying her temporary total disability ("TTD") compensation beginning August 3, 2006, and to enter an order granting said compensation.
Findings of Fact: {¶ 5} 1. On November 16, 2005, relator sustained an industrial injury while employed as an assembly line worker for respondent The Holland Group of Tennessee, Inc. ("Holland Group"), a state-fund employer. The industrial claim is allowed for "sprain right shoulder/arm; aggravation of pre-existing AC joint arthritis right shoulder; impingement syndrome right shoulder; superior labrum detachment right shoulder," and is assigned claim number 05-412724.
 {¶ 6} 2. Following the injury, relator received wage continuation payments from the Holland Group while she was unable to return to her former position of employment.
 {¶ 7} 3. On May 25, 2006, at the request of Holland Group, relator was examined by orthopedic surgeon B. Rodney Comisar, Jr., M.D., who wrote:
 I believe Ms. Gordon will be able to work in a restricted or limited sedentary to light duty type capacity at this time, with the restrictions outlined on the C-143 form as well as by the performance of a functional capacity evaluation. Her main limitations are with respect to her right shoulder. She is developing signs and symptoms consistent with adhesive capsulitis or arthrofibrosis of her right shoulder as a result of her overuse injury.
 {¶ 8} 4. On August 29, 2006, Dr. Comisar completed a C-143 on which he indicated that relator cannot lift over ten pounds. He also indicated limited use of the arm. Dr. Comisar also indicated that the restrictions were temporary and they could be expected to last from June 1 to August 18, 2006. *Page 5 
 {¶ 9} 5. By letter dated July 27, 2006, the Holland Group informed relator:
 Holland Employment is dedicated to providing modified duty work that allows our injured employees to return to work as quickly as possible following a workplace illness/injury. Dr. Comasir [sic] has informed us that you have been released to modified duty status as of 6/1/06. We will be able to accommodate the restrictions listed on the C-143 dated 5/29/06.
 You will be scheduled for forty hours per week and paid at a rate of $8.50/hr. Your job duties will include copying forms, assembling orientation packets, laminating parking passes, compiling survey results, taking inventory of forms and periodic office cleaning.
 You should report to work at 1713 Marion — Mt. Gilead Road Suite 105 Marion OH 43302, 8:00 A.M. on 7/31/06, for your assignment. The job duties of this assignment may vary, but will always be within the restrictions that the doctor has given you. I will discuss these with you in greater detail once you report for your first day of this assignment.
 {¶ 10} 6. Earlier, on July 5, 2006, treating physician Bernard J. Palma, D.O., certified TTD from July 6, 2006 to an estimated return-to-work date of August 16, 2006.
 {¶ 11} 7. Following the October 18, 2006 hearing, a district hearing officer ("DHO") issued an order granting TTD compensation beginning August 1, 2006, which is the day following the employer's termination of wage continuation payments.
 {¶ 12} 8. The Holland Group administratively appealed the DHO's order of October 18, 2006.
 {¶ 13} 9. Following a November 28, 2006 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order was being modified. The SHO's order states:
 The Staff Hearing Officer modifies the 10/18/2006 order to deny the request for temporary total compensation for the period from 08/03/2006 through the date of today's hearing. *Page 6 
 The Staff Hearing Officer bases the denial of temporary total compensation on a finding that as of 08/03/2006, the claimant refused a written good faith offer of suitable employment within the claimant's restrictions. Specifically, the Staff Hearing Officer finds that in his 05/29/2006 extent of disability examination for the Bureau of Workers' Compensation, Dr. Comisar indicated that the claimant was capable of restricted duty work at the sedentary level, with no repetitive activity of the right arm and limited use of the right arm. Based on Dr. Comisar's restrictions, the employer per letter dated 07/27/2006 made a written offer to the claimant of restricted duty work in the employer's office consistent with Dr. Comisar's restrictions, with the duties including copying, assembling packets of documents, compiling survey results, taking inventory of forms, and periodic office cleaning. The claimant received the written offer of restricted duty employment on 08/02/2006, per her signature on the certified mail receipt on file, but did not accept the light duty offer. As such, pursuant to the claimant's refusal of light duty employment and an application of OAC 4121-3-32, the Staff Hearing Officer finds that the claimant is not entitled to temporary total compensation for periods after 08/02/2006.
 The Staff Hearing Officer finds that the claimant is entitled to temporary total compensation for the two-day period of 08/01/2006 through 08/02/2006, subsequent to the termination of wage continuation and prior to her refusal of restricted duty work. The award is based on the C-84 report of Dr. Palma dated 07/05/2006.
 At hearing, the claimant contended that there should be no consideration of the effect of any refusal on the claimant's part of an offer of restricted duty employment as of 08/03/2006 due to the fact that the offer was not based on restrictions provided by the attending physician, Dr. Palma. The Staff Hearing Officer finds that pursuant to OAC 4121-3-32, a Hearing Officer at a hearing may make a finding of a good faith offer of suitable employment based on the report of a physician other than the physician of record. It is true that the provisions of OAC 4121-3-32(B)(1)(b) are geared to the opinion of the physician of record; however, the provisions of 4121-3-32(B)(2)(d), pertaining to what a Hearing Officer can do after a hearing, are not so geared. To interpret that sub-paragraph differently would render it redundant, in light of 4121-3-32(B)(2)(a). Accordingly, the Staff Hearing Officer finds that the claimant refused a written *Page 7 
good faith offer of suitable employment as of 08/03/2006 and that she is not entitled to temporary total compensation after that date as a result of the refusal.
 {¶ 14} 10. On December 10, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 28, 2006.
 {¶ 15} 11. On March 5, 2007, relator, Mindy M. Gordon, filed this mandamus action.
Conclusions of Law: {¶ 16} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 17} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when work within the physical capabilities of the employee is made available by the employer."
 {¶ 18} Supplementing the statute, Ohio Adm. Code 4121-3-32(A) provides the following definitions:
 (3) "Suitable employment" means work which is within the injured worker's physical capabilities.
 * * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence. * * *
 {¶ 19} Ohio Adm. Code 4121-3-32(B)(2) provides that TTD compensation may be terminated after a hearing:
 (d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment. *Page 8 
 {¶ 20} In State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.
(2000), 90 Ohio St.3d 428, the employer's job offer misstated the restrictions of the claimant's treating physician, Dr. Steele, who had authorized the claimant's return to light duty work. The Coxson court issued a writ of mandamus ordering the commission to vacate its determination that "claimant refused a legitimate light duty offer of employment." Id. at 431.
 {¶ 21} The Coxson court rejected the employer's contention that the job offer was sufficient because the employer had promised to "work with the physician to modify jobs within given restrictions or limitations." Id. at 433. The Coxson court explained:
 * * * The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions.
Id. at 433.
 {¶ 22} Both this court and the Supreme Court of Ohio have summarizedCoxson's holding.
 {¶ 23} In State ex rel. Professional Restaffing of Ohio, Inc. v.Indus. Comm., Franklin App. No. 02AP-696, 2003-Ohio-1453, this court states:
 * * * Under Coxson, the offer of suitable employment must identify the position offered and generally describe the duties required so that a claimant, his or her physician, and/or the commission can determine whether the required duties are consistent with the medical restrictions. * * *
 {¶ 24} Recently, in State ex rel. Ganu v. Willow Brook ChristianCommunities, 108 Ohio St.3d 296, 2006-Ohio-907, at ¶ 41, the court stated: *Page 9 
 * * * Coxson held that a written offer of suitable employment must clearly identify the physical demands of the job and, moreover, that an offer lacking the requisite clarity could not be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored.
 {¶ 25} According to relator, the July 27, 2006 letter from Holland Group fails to clearly identify the physical demands of the job being offered and, thus, fails to satisfy Ganu. The magistrate disagrees.
 {¶ 26} The July 27, 2006 letter states that the job duties include "copying forms, assembling orientation packets, laminating parking passes, compiling survey results, taking inventory of forms and periodic office cleaning." Thus, the letter does clearly identify the physical demands of the job as required by Ganu.
 {¶ 27} Relator further argues that the July 27, 2006 letter is flawed because allegedly "there is no assurance" that the job tasks listed would not violate Dr. Comisar's restrictions. (Relator's brief, at 11.) Relator seems to suggest that the Holland Group was required to obtain from Dr. Comisar another report explaining how relator could perform the tasks within her restrictions. However, as this court explained inProfessional Restaffing, the offer must generally describe the duties of the job so that the commission can determine whether the required duties are consistent with the medical restrictions. In other words, it is the commission that ultimately determines whether the job offer meets the medical restrictions.
 {¶ 28} Here, the commission, through its SHO, evaluated the job offer in light of Dr. Comisar's restrictions and briefly explained its analysis in its order. That is all that is required. *Page 10 
 {¶ 29} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1