IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Summitville Tiles, Inc., seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that awarded temporary total disability ("TTD") compensation to respondent Cheryl A. Riggs ("claimant") as of February 2, 2004, and to deny TTD compensation to claimant.
 {¶ 2} Pursuant to former Loc. R. 12(M) of the Tenth District Court of Appeals, this court appointed a magistrate without limitation of powers specified in former Civ.R. 53(C) to consider relator's cause of action.[1] The magistrate examined the evidence and issued a decision, wherein he made findings of fact and conclusions of law. (Attached as Appendix A.)
 {¶ 3} Both relator and claimant have filed objections to the magistrate's decision; the commission, however, has not objected to the magistrate's decision. See, generally, Civ.R. 53(D)(3)(b). We therefore independently review the matters to which the parties objected to determine whether the magistrate has properly determined the factual issues and appropriately applied the law. See Civ.R. 53(D)(4)(d).
 {¶ 4} While the matter was before the magistrate, relator moved for leave to supplement the record instanter with a copy of a report of Karl Metz, M.D., dated November 16, 2004. Providing respondents with an opportunity to oppose relator's motion, the magistrate indicated that he would issue a ruling as to relator's motion when he rendered his decision; however, he failed to do so. Accordingly, relator's motion is still pending before this court. Finding no opposition to relator's motion in the record, we hereby grant relator's motion for leave to supplement the record instanter with a copy of the report of Dr. Metz, dated November 16, 2004.
 {¶ 5} To be entitled to a writ of mandamus, a relator must show (1) a clear legal right to the requested relief; (2) the respondent is under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. State ex rel. Fain v. Summit Cty. AdultProbation Dept. (1995), 71 Ohio St.3d 658, citing State ex rel. Howardv. Ferreri (1994), 70 Ohio St.3d 587, 589.
 {¶ 6} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel. Valley PontiacCo., Inc. v. Indus. Comm. (1991), 71 Ohio App.3d 388, 391, citingState ex rel Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is inappropriate." Valley Pontiac Co., Inc., at 391, citing State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 7} Here, claimant has two industrial claims against relator, namely, workers' compensation claim No. 01-416338 and claim No. 03-81097. However, in the action before the court, relator only challenges TTD compensation that was awarded in claim No. 01-416338. In this action, relator does not challenge the allowance of additional conditions by the commission in claim No. 01-416338.
 {¶ 8} Regarding claim No. 03-81097, between March 3, 2003, and February 1, 2004, relator apparently paid wages in lieu of TTD compensation for this claim. On January 8, 2004, Bernard Hirsch, M.D., who treated claimant's bilateral carpal tunnel syndrome, an allowed condition in claim No. 03-81097, estimated that claimant could return to work on February 1, 2004, with some physical restrictions. By letter dated January 27, 2004, relator, through its president and CEO, informed claimant that it would accommodate the restrictions indicated by Dr. Hirsch and directed claimant to return to work on February 2, 2004.
 {¶ 9} Thereafter, a slip dated January 28, 2004, with the purported signature of Dr. Hirsch, indicated that claimant should not work until she was evaluated on March 10, 2004, due to the need for possible surgery. After relator's representative contacted Dr. Hirsch's office to clarify Dr. Hirsch's recommendation, by letter dated February 13, 2004, relator directed claimant to report for restricted duty no later than February 16, 2004. After claimant failed to report for work on February 16, 2004, relator terminated claimant's employment effective February 17, 2004.
 {¶ 10} Meanwhile, James J. Graneto, D.C., who had treated claimant for neck and lumbar sprains in claim No. 01-416338, certified a period of TTD as of January 1, 2004, with an estimated return-to-work date of March 15, 2004. Thereafter, claimant moved for TTD compensation, effective January 1, 2004. Claimant later moved for additional allowances in claim No. 01-416338. At the request of the Ohio Bureau of Workers' Compensation ("bureau"), Andrew E. Schmutz, D.C., another chiropractor, evaluated claimant. Although relator received notice that Dr. Graneto excused claimant from work through March 15, 2004, relator nonetheless maintained that claimant should return to work with accommodations recommended by Dr. Hirsch in claim No. 03-81097.
 {¶ 11} Following a hearing to consider claimant's motions in claim No. 01-416338, a district hearing officer ("DHO") awarded TTD compensation from January 1 through June 9, 2004, with future TTD compensation contingent upon submission of further medical evidence. The DHO also granted some additional claim allowances and denied some claim allowances. Both relator and claimant appealed from the DHO's order.
 {¶ 12} Following a hearing, a staff hearing officer ("SHO") affirmed the DHO's order. Both relator and claimant appealed from the SHO's order. Agreeing to consider the parties' appeals, the commission assigned the matter to a commission deputy. Denying TTD compensation for the period of January 1 through February 1, 2004, the deputy modified the SHO's order. Relator then moved for reconsideration of the deputy's order. After the commission denied relator's reconsideration motion, relator filed the instant complaint in mandamus.
 {¶ 13} Finding that: (1) the commission did not abuse its discretion by determining that relator failed to show that claimant voluntarily abandoned employment; (2) the commission did not abuse its discretion by not finding that claimant had refused a written job offer of suitable employment; (3) the commission did not abuse its discretion by denying relator's reconsideration request; and (4) the commission's failure to make a finding as to maximum medical improvement ("MMI") did not permit the commission to rely upon Dr. Graneto's C-84 reports to support an award of TTD compensation as of February 2, 2004, the magistrate recommended issuance of a writ of mandamus. The writ of mandamus recommended by the magistrate would order the commission to vacate a portion of a deputy's order that adjudicated medical issues related to TTD and direct the commission to enter a new order that adjudicates claimant's motion for TTD compensation, in a manner consistent with the magistrate's decision.
 {¶ 14} Except for the magistrate's finding that the commission's failure to make a finding of MMI did not permit the commission to rely upon Dr. Graneto's C-84 reports to support an award of TTD compensation, effective February 2, 2004, relator objects to the magistrate's other findings that concluded that the commission did not abuse its discretion by: (1) determining that claimant did not voluntarily abandon employment; (2) determining that claimant did not refuse a written job offer of suitable employment; and (3) determining that the commission did not err by denying reconsideration. For the reasons discussed within, relator's objections are unconvincing.
 {¶ 15} Here, relator's letters of January 27, February 10, and February 13, 2004, regarding work accommodations pertaining to claim No. 03-81097 do not concern allowed conditions in claim No. 01-416338, which was the claim under consideration by the commission. Rather, these letters were a response to physical restrictions in claim No. 03-81097, which concerned a claim based upon bilateral carpal tunnel syndrome, not neck and lumbar sprains as in claim No. 01-416338. Because relator's letters were a response to physical restrictions in claim No. 03-81097, and not claim No. 01-416338, these letters are therefore inapposite to show that claimant refused a written job offer of suitable employment in claim No. 01-416338. See, generally, State ex rel. Ganu v. Willow BrookChristian Communities, 108 Ohio St.3d 296, 2006-Ohio-907, at ¶ 38
(stating that "R.C. 4123.56(A) and Ohio Adm. Code 4121-3-32 prohibit the payment of temporary total disability compensation after a claimant has refused a good-faith written offer of suitable employment, i.e., work within the claimant's medical capacities").
 {¶ 16} Furthermore, whether a claimant abandons employment " ' "* * * is proved by evidence of intention to abandon as well as acts by which the intention is put into effect." ' " State ex rel. Diversitech Gen.Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383, quoting West Park Shopping Center v. Masheter (1966), 6 Ohio St.2d 142,144. Therefore, "[t]he question of abandonment is 'primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered.' " DiversitechGen. Plastic Film Div., at 383, quoting State v. Freeman (1980),64 Ohio St.2d 291, 297, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107. Consequently, "[t]he presence of such intent, being a factual question, is a determination for the commission." Diversitech Gen. Plastic FilmDiv., at 383, citing State ex rel. Allied Wheel Products, Inc. v. Indus.Comm. (1956), 166 Ohio St. 47.
 {¶ 17} Here, a relevant circumstance existing at the time of claimant's failure to report to work on February 16, 2004, was Dr. Graneto's certification of claimant's inability to return to work due to neck and lumbar sprains allowed in claim No. 01-416338. We, therefore, cannot conclude that the magistrate erred by finding that the commission did not abuse its discretion by determining that relator failed to show that claimant had voluntarily abandoned her employment.
 {¶ 18} As to relator's contention that the magistrate erred by finding that the commission did not abuse its discretion by denying relator's request for reconsideration of the deputy's order, such contention is also not well-taken.
 {¶ 19} Continuing jurisdiction of the commission is not unlimited.State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454,458-459, citing State ex rel. B C Machine Co. v. Indus. Comm. (1992),65 Ohio St.3d 538, rehearing denied (1993), 66 Ohio St.3d 1414. See, generally, R.C. 4123.52 (continuing jurisdiction of Industrial Commission). Prerequisites for the commission's exercise of continuing jurisdiction are: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by inferior tribunal. Nicholls, at 459; see, also, State ex rel. Foster v.Indus. Comm. (1999), 85 Ohio St.3d 320, 322.
 {¶ 20} Here, relator contends, among other things, that the deputy made a mistake of fact when he found that job offers were not in writing as required by Ohio Adm. Code 4123-3-32(A)(7). Even assuming arguendo that the deputy's order contains a mistake of fact as to relator's job offer in claim No. 03-81097, we cannot conclude that the commission's failure to reconsider its decisionis prejudicial because, as discussed above, relator's job offer in claim No. 03-81097, which concerned claimant's carpal tunnel syndrome, is inapposite to show that claimant refused a written job offer of suitable employment in case No. 01-416338, which concerned neck and lumbar sprains.
 {¶ 21} Moreover, relator's contention, that the deputy's order violatesState ex rel. Noll v. Indus. Comm. (1990), 57 Ohio St.3d 203, and therefore the magistrate erred by failing to find an abuse of discretion by the commission for not reconsidering the deputy's order on the basis of a Noll violation, is unpersuasive. In Noll, the Supreme Court of Ohio held: "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." Id. at syllabus. Here, in his order, the deputy explained his reasoning for his decision and the deputy also stated that he awarded TTD compensation in reliance upon Dr. Graneto's C-84s dated February 5, May 18, June 25, and September 28, 2004. Thus, the deputy's order complies with the requirements of Noll.
 {¶ 22} Accordingly, for the foregoing reasons, we overrule relator's objections to the magistrate's decision.
 {¶ 23} In claimant's objections, claimant asserts, among other things, that the magistrate misconstrued the deputy's order. According to claimant, the commission awarded TTD compensation based on previously allowed conditions, not for the newly allowed conditions in the deputy's order.
 {¶ 24} Here, the deputy's order stated, in part:
 The employer also is critical of the medical evidence submitted in support of temporary total disability. The conditions listed on the C-84s as disabling are limited to the two soft tissue conditions which are now nearly 3 1/2 years old. The independent medical examiner concludes these two conditions have reached maximum medical improvement. The employer argues that since the C-84s only list two longstanding soft tissue injuries and the most credible medical evidence is that these conditions have reached maximum medical improvement, temporary total disability compensation is not properly payable. The deputy does not find this argument to be well-taken. All of the physicians who have offered an opinion on this subject agree the injured worker is unable to return to her former position of employment, and that the conditions which are additionally allowed by this order have not reached maximum medical improvement. Even if the lumbar and cervical sprains have resolved, as the employer maintains, denial of temporary total disability compensation on medical grounds is not indicated under these facts.
 {¶ 25} Although the deputy plainly finds unpersuasive relator's contention that TTD compensation is not properly payable because the basis of Dr. Graneto's C-84s are medical conditions that the independent medical examiner concluded had reached MMI, the underlying reasoning supporting this finding seemingly relies on conditions that were additionally allowed by the deputy's order, not on conditions that were previously allowed by the commission. Such reasoning appears at variance with the deputy's later statement that "[t]he award of temporary total disability compensation is made in reliance upon the 02/05/2004, 05/18/2004, 06/25/2004 and 09/28/2004 C-84s from Dr. Graneto," which were based on the previously allowed conditions by the commission.
 {¶ 26} At the very least, to the extent that the deputy's order is confusing and indistinct as to whether the award of TTD compensation is based on conditions that were additionally allowed by the deputy's order rather than on previously allowed conditions, and because the deputy's order made no finding as to whether claimant reached MMI as to the previously allowed conditions, we cannot conclude that the magistrate erred by recommending issuance of a writ of mandamus ordering the commission to vacate that portion of the deputy's order that adjudicates the medical issues related to the deputy's award of TTD compensation to claimant as of February 2, 2004, and enter a new order that adjudicates claimant's motion for TTD compensation.
 {¶ 27} Therefore, for the foregoing reasons, we overrule claimant's objections to the magistrate's decision.
 {¶ 28} Finally, having overruled both relator's and claimant's objections to the magistrate's decision, based upon our independent review, we nonetheless find a defect on the face of the magistrate's decision concerning the magistrate's twenty-eighth finding of fact. In his twenty-eighth finding of fact, the magistrate incorrectly referred to the date of the deputy's order as "December 10, 2004," rather than "December 1, 2004."
 {¶ 29} Accordingly, finding no other defect or error of law on the face of the magistrate's decision, we conclude that, except as previously indicated, the magistrate has properly determined the pertinent facts and appropriately applied the law to those facts when he recommended issuance of a limited writ of mandamus. Therefore, as amplified here, we adopt the magistrate's findings of fact and conclusions of law, with the exception of the magistrate's twenty-eighth finding of fact, as discussed above. Furthermore, we overrule relator's and claimant's objections to the magistrate's decision. In accordance with the magistrate's recommendation, we grant a limited writ of mandamus ordering the commission to vacate that portion of the deputy's order of December 1, 2004, that adjudicates the medical issues related to the deputy's award of TTD compensation to claimant as of February 2, 2004, and to enter a new order that adjudicates claimant's motion for TTD compensation. We also grant relator's motion for leave to supplement the record instanter with a copy of the report of Karl Metz, M.D., dated November 16, 2004.
Motion for leave to supplement the record instanter granted;objections overruled; and limited writ of mandamus granted.
BROWN and FRENCH, JJ., concur.
 APPENDIX A MAGISTRATE' S DECISION IN MANDAMUS {¶ 30} In this original action, relator, Summitville Tiles, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Cheryl A. Riggs ("claimant") beginning February 2, 2004, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 31} 1. Claimant has two industrial claims against relator, a state-fund employer. Both claims arose out of her employment as a laborer.
 {¶ 32} 2. Claim number 01-416338 involves an injury that occurred July 9, 2001. It was initially allowed for "sprain of neck; sprain lumbar region." TTD compensation awarded in claim number 01-416338 is being challenged in this action.
 {¶ 33} 3. Claim number 03-81097 is allowed for "bilateral carpal tunnel syndrome."
 {¶ 34} 4. Bernard Hirsch, M.D., was claimant's treating physician for her bilateral carpal tunnel syndrome.
 {¶ 35} 5. Relator paid claimant wages in lieu of TTD compensation in claim number 03-81097 for the period March 3, 2003 through February 1, 2004.
 {¶ 36} 6. On January 8, 2004, Dr. Hirsch estimated that claimant would be able to return to her former position of employment with relator on February 1, 2004. He also indicated that there were physical restrictions associated with a return to work.
 {¶ 37} 7. By letter dated January 27, 2004, relator's president and CEO David W. Johnson informed claimant:
 We have reviewed the medical report issued on January 8, 2004, by Dr. Bernard Hirsch. The report indicates that you are released for work as of February 1, 2004, with certain restrictions. A copy of the restrictions listed by the doctor are enclosed. Please be advised that we will accommodate the restrictions noted in the report and hereby request that you report for work at the Pekin plant on Monday, February 2, 2004.
 We are enclosing a paycheck which covers the remaining wage continuation payments that are to be payable for the period January 12 through February 1, 2004. * * *
 {¶ 38} 8. A slip from Dr. Hirsch's office dated January 28, 2004 states: "No work until evaluated on 3-10-04. May need further surgery." The slip contains a signature purporting to be that of Dr. Hirsch.
 {¶ 39} 9. By letter dated January 29, 2004, relator's controller J. Mark Webb wrote to Dr. Hirsch. Mr. Webb stated:
 We have received by fax a doctor's slip from your office indicating the above-referenced employee is to now be off work until 3-10-04. The slip is obviously not signed by you, at least in comparing the signature to the signature on your report dated 1/8/04. On that report you stated the employee was allowed to come back then (1/8/04) with certain restrictions; and then allowed to assume full duties on 2/1/04.
 It appears one of the date on the "new" doctor's slip was either legitimately changed or marked over, or has been altered for some other reason. And as mentioned above, the signature is clearly different than the one appearing on the 1/8/04 report indicating the employee was cleared to work.
 Furthermore[,] since the employee has actually not worked yet, it is [sic] raises the question what has happened to her since 1/8/04 to cause a change in the condition of the employee to now render her unable to work until 3/10/04?
 We would greatly appreciate any and all information you have related to this matter. This is becoming a costly and troubling situation.
 {¶ 40} 10. By letter dated February 5, 2004, Mr. Johnson informed claimant:
 * * * After learning that we do indeed offer restricted duty work, Dr. Hirsch has released you back for restricted duty work within the parameters prescribed in his report. This has been conveyed to us as of this date via phone conference.
 I want you to also be aware that Dr. Hirsch's office has advised us that, after having formerly released you for restricted duty work beginning 2/1/04, you had called Dr. Hirsch's office to advise that Summitville Tiles did not offer restricted duty work. In fact, I had specifically advised you during your last visit with me at my office on January 23, 2004 that we do offer restricted duty work. * * *
 * * * [Y]ou are now being advised that you are to report back to work at the Minerva factory for restricted duty work no later than February 16, 2004. It is incumbent of you to call the Minerva factory office * * * immediately upon receipt of this letter to arrange for your return to work.
(Emphasis sic.)
 {¶ 41} 11. James J. Graneto, D.C., had been claimant's treating chiropractor for the neck and lumbar sprains in claim number 01-416338. On a C-84 dated February 5, 2004, Dr. Graneto certified a period of TTD beginning January 1, 2004 to an estimated return-to-work date of March 15, 2004. On the C-84, Dr. Graneto listed 847.0 and 847.2 as the ICD-9 codes which indicate the allowed conditions being treated which prevent a return to work. ICD-9 codes 847.0 and 847.2 relate to the neck and lumbar sprains allowed in claim number 01-416338.
 {¶ 42} 12. In a letter to Dr. Graneto dated February 6, 2004, Mr. Johnson acknowledged that he had received notice that Dr. Graneto had excused claimant from work through March 15, 2004.
 {¶ 43} 13. On February 10, 2004, citing Dr. Graneto's C-84, claimant moved for TTD compensation beginning January 1, 2004.
 {¶ 44} 14. By letter dated February 10, 2004, Mr. Johnson informed claimant's counsel:
 Thank you for your letter dated February 9, 2004.
 Please note that we have indeed offered Cheryl Riggs specific "light duty" work pursuant to the prescription of her attending physician, Dr. Bernard Hirsch. I am attaching a copy of Dr. Hirsch's prescription for "light duty" work. We intend to comply with the instructions of Dr. Hirsch.
 {¶ 45} 15. By letter dated February 13, 2004, Mr. Johnson informed claimant:
 Again, I am advising you that you must report back to work immediately upon receipt of this notice . . . which I am faxing to your home address as well as mailing to your home, both, by regular mail and by certified letter. I am also sending a copy of this letter to you[r] legal counsel since he has been writing to us on your behalf.
 Please note that we are accommodating your physician's prescription for "light duty" work by offering your employment as a Trim Selector. The full description of this work assignment is enclosed for your review.
 You cannot continue to prolong you time off work any longer. Already one month has elapsed since your physician first advised you that he had released you back to work. And, you have been given multiple notices that you are expected back to work on Monday, February 16. You must call the Summitville Tiles office at Minerva * * * immediately upon receipt of this letter to arrange for your return to work.
(Emphasis sic.)
 {¶ 46} 16. By letter dated February 13, 2004, Mr. Johnson informed claimant's counsel:
 Thank you for your letter dated February 10, 2004.
 Please find attached to this letter a copy of the job title and description that we will be assigning to your client, Ms. Cheryl Riggs, upon her return to work. Specifically, this job title is that of a Trim Selector. The essential job functions, task elements and equipment used for this position are all spelled out in detail and are consistent with the prescription for light duty work given to the Company by your client's physician, Dr. Bernard Hirsch.
 17. By letter dated February 17, 2004, Mr. Johnson informed claimant:
 We have repeatedly advised you by regular mail, by certified mail and by fax that you were to report back to work in accordance with your treating physician's notice dated January 8, 2004. That original notice released you back for work February 2, 2004, but for a multitude of reasons, we accommodated delays in your start back to "restricted duty" work until February 16, 2004. You and your counsel have been given ample notice of your requirement to report back to work by this date but you have failed to do so.
 The Employee Handbook for Hourly Employees specifically covers the consequences of an employee's failure to return to work following a leave of absence under: Loss of Service Credit Paragraph 5. You have signed a document that certifies that you have read the Company's Employee Handbook and that you understand that all employees are expected to abide by it.
 With all of this in mind, you are notified by this letter that your employment with Summitville Tiles, Inc. is terminated effective with this letter. * * *
 {¶ 47} 18. In a report dated March 26, 2004, Dr. Graneto states:
 It is therefore within a reasonable degree of medical certainty based on the medical documentation present for review, the mechanism of injury, the multiple exacerbations, the protracted response to care and the findings of the MRI scan of 11/3/03 that the request for aggravation of the conditions of central spinal canal stenosis, L4-5; right central protrusion-type of disc herniation, L4-5; bilateral neural canal stenosis, L4-5 and L5-S1; disc degeneration L1-2, L3-4, L4-5 and L5-S1; cyst like lesion over the right neural canal at L5-S1; synovial cyst of left L4-5 facet joint are medically substantiated as being a direct and proximate result of and/or causally related to the original injury.
 {¶ 48} 19. On April 7, 2004, citing Dr. Graneto's March 26, 2004 report, claimant moved for additional allowances in claim number 01-416338.
 {¶ 49} 20. Earlier, on April 1, 2004, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), claimant was examined by chiropractor Andrew E. Schmutz, D.C. Dr. Schmutz examined relator for the allowed conditions in claim number 01- 416338, i.e., 847.0 sprain of neck and 847.2 sprain lumbar region. In his report dated April 8, 2004, Dr. Schmutz wrote:
QUESTIONS TO BE ADDRESSED:
 1. In your medical opinion, has the injured worker reached a treatment plateau that is static or well stabilized, at which no fundamental, functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitation procedures (maximum medical improvement)? Please explain.
 With regard to the allowed conditions in the claim, this [injured worker] is at MMI. No fundamental, functional, or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitation procedures. Ms. Riggs['] complaints today are more likely related to a condition NOT recognized in her claim.
 * * *
 2. Can the injured worker return to her former position of employment? If yes, are there any restrictions or modifications?
 The [injured worker] stated that she was fired from her position of employment in February. She should be able to return to some light or sedentary work at this time. Lifting stacks of tile would definitely not be indicated at this time.
 * * *
 Additional questions for this specific examination:
 1. If the injured worker has NOT reached Maximum Medical Improvement (MMI), provide a date, time frame, or suggestion when re-examination will be appropriate.
 With respect to the allowed conditions in the claim, she is at MMI.
 2. Based on the medical documentation present, the mechanism of injury, and your independent medical exam, is the request for a New Period of Temporary Total Disability from "1-1-2004 thru 3-15-2004 to present, and continuing", based on submission of further medical evidence, medically substantiated as a direct and proximate result of, and/or causally related to the [occupational injury]?
 Yes, based on the documentation present, the mechanism of injury (lifting combined with rotation and lumbar flexion), and my examination today, the request for a new period of TTD is substantiated as a direct and proximate result or, and/or causally related to the [occupational injury]. Although her claim is allowed only for lumbar and cervical sprain/strain injuries, the mechanism of injury and my exam findings suggest that her injuries are more than sprains or strains. The radiology studies also confirm this point.
(Emphasis sic.)
 {¶ 50} 21. Claimant's April 7, 2004 motion for additional claim allowances prompted the bureau to seek an addendum report from Dr. Schmutz. The addendum report, dated April 12, 2004, states:
 Therefore, given the mechanism of injury, the POR's [physician of record] initial exam, and the imaging studies the following conditions should be allowed:
 1. Aggravation of pre-existing conditions of central spinal canal stenosis L4-5.
 2. Right central protrusion-type of disc herniation, L4-5.
 3. Bilateral neural canal stenosis, L4-, L5-S1.
 These conditions are not at MMI. She continues to note radicular findings as mentioned in her 4/8/04 report. She should continue with active stabilization exercises and passive modalities. Re-examination would be advisable in 10-12 weeks. If her symptoms do not resolve, further measures may be necessary (epidural injections, prescription medications, and/or orthopedic consult).
 However, the remainder of the conditions requested by the claimant does not appear to be causally related to the original injury. These conditions are degenerative in nature and are more likely a result of the patient's age, size, overall conditioning, and occupational history.
 {¶ 51} 22. On June 9, 2004, a district hearing officer ("DHO") heard the two motions filed by claimant on February 10 and April 7, 2004. Following the hearing, the DHO issued an order awarding TTD compensation from January 1 to June 9, 2004, and to continue upon submission of medical evidence. The TTD award was exclusively based upon two C-84 reports from Dr. Graneto dated February 5 and May 18, 2004.
 {¶ 52} The DHO also granted additional claim allowances based upon the April 12, 2004 report of Dr. Schmutz. The DHO also denied some of the allowances requested by claimant.
 {¶ 53} 23. Both relator and claimant administratively appealed the DHO's order of June 9, 2004.
 {¶ 54} 24. Following a September 27, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of June 9, 2004.
 {¶ 55} 25. Both relator and claimant administratively appealed the SHO's order of September 27, 2004.
 {¶ 56} 26. The commission decided to hear the parties' appeals. It assigned the appeal to be heard by a commission deputy.
 {¶ 57} 27. Following a December 1, 2004 hearing, the deputy issued an order approved by two of the three commission members. The deputy's order of December 1, 2004 states:
 It is the order of the Deputy that the order of the Staff Hearing Officer dated 09/27/2004, is modified.
 By way of background, the injured worker received wage continuation as compensation for lost time due to claim number 03-810971, which is allowed for BILATERAL CARPAL TUNNEL SYNDROME, from 03/03/2003 through and including 02/01/2004. Prior to the hearings under review in claim number 01-416338, it was only allowed for SPRAIN OF NECK; SPRAIN LUMBAR REGION.
 There are two groups of issues under consideration.
 One is the request for additional allowances contained in the injured worker's motion filed 04/07/2004. This motion requests the additional allowance of AGGRAVATION OF THE PRE-EXISTING CONDITIONS OF CENTRAL SPINAL CANAL STENOSIS, L4-5; RIGHT CENTRAL PROTRUSION-TYPE OF DISC HERNIATION, L4-5; BILATERAL NEURAL CANAL STENOSIS, L4-5 AND L5-S1; DISC DEGENERATION, L1-2, L3-4, L4-5 AND L5-S1; CYST LIKE LESION OVER THE RIGHT NEURAL CANAL AT L5-S1; AND SYNOVIAL CYST OF LEFT L4-5 FACET JOINT. This motion states it is supported by an attached report from James J. Graneto, D.C., and an MRI report.
 The other is the injured worker's motion filed 02/10/2004 seeking payment of temporary total disability compensation over the period of 01/01/2004 through 03/15/2004, "and to continue." This motion states it is supported by the 02/05/2004 C-84 from Dr. Graneto. This C-84 states that the conditions which disable the injured worker are 847.0 and 847.2, cervical and lumbar sprains. This C-84 also states it is based on the examination of 02/05/2004; however, Dr. Graneto has been the attending physician under this claim and was actively involved in providing care, as demonstrated by the fifty-five office notes from Dr. Graneto over the period 03/07/2003 through 12/04/2003 reviewed by Dr. Schmutz.
 The injured worker was referred by the Bureau of Workers' Compensation to a 04/01/2004 independent medical examination by Andrew E. Schmutz, D.C. Dr. Schmutz prepared a report dated 04/08/2004 in which he found that the injured worker had reached maximum medical improvement with respects [sic] to the two conditions allowed at that time, SPRAIN OF NECK and SPRAIN LUMBAR REGION. Dr. Schmutz further found that the injured worker was able to return to "some light or sedentary work at this time" but not her former position of employment.
 Dr. Schmutz was later asked to prepare an addendum concerning the injured worker's request for additional allowances, which he did on 04/12/2004. After a discussion of the documents reviewed and findings noted in his initial report of examination, Dr. Schmutz offered this opinion:
 Therefore, given the mechanism of injury, the POR's [physician of record] initial exam, and the imaging studies the following conditions should be allowed:
 1. Aggravation of pre-existing conditions of central spinal canal stenosis L4-5.
 2. Right central protrusion-type of disc herniation, L4-5.
 3. Bilateral neural canal stenosis, L4-5, L5-S1.
 These conditions are not at MMI. She continues to note radicular findings as mentioned in her 4/8/04 report. She should continue with active stabilization exercises and passive modalities. Re-examination would be advisable in 10-22 weeks. If her symptoms do not resolve, further measures may be necessary (epidural injections, prescription medications, and/or orthopedic consult.)
 However, the remainder of the conditions requested by the claimant does (sic) not appear to be causally related to the original injury. These conditions are degenerative in nature and are more likely a result of the patient's age, size, overall conditioning, and occupational history.
 Accompanying these reports from Dr. Schmutz was a C-140 which states that, in an 8 hour day, the injured worker can sit, stand or walk up to 4 hours. She could frequently reach, occasionally bend or squat, and never crawl or climb. She could lift up to 10 pounds frequently and up to 25 pounds occasionally. She could continuously carry up to 5 pounds, frequently carry up to 10 pounds, and occasionally carry up to 25 pounds.
 There are now three new C-84s from Dr. Graneto, dated 05/18/2004 and 06/25/2004, and 09/28/2004. These forms certify to temporary total disability due to 847.0 and 847.2 through 12/01/2004.
 It is also noteworthy that the injured worker underwent an examination by a physician of the employer's choice on 07/30/2004 by John R. Beltz, D.C., and that Dr. Beltz found the injured worker, "certainly could not perform her prior heavy labor job that she was performing when she was injured under this claim."
 With regard to the requested additional allowances, the Deputy finds that the report of Dr. Schmutz, obtained by the Bureau of Workers' Compensation, is the best-supported opinion. The presence of all requested conditions is confirmed by MRI and no physician concludes the injured worker does not have these conditions. Dr. Schmutz concluded that some, but not all, of the requested conditions were aggravated by the allowed injury.
 It is the order of the Deputy that the claim is additionally allowed for AGGRAVATION OF PRE-EXISTING CONDITIONS OF CENTRAL SPINAL CANAL STENOSIS L4-5; RIGHT CENTRAL PROTRUSION-TYPE OF DISC HERNIATION, L4-5; AND BILATERAL NEURAL CANAL STENOSIS L4-5, L5-S1. These additional allowances are based on the 04/12/2004 addendum report of Dr. Schmutz, the 03/26/2004 report of Dr. Graneto, and the 11/03/2003 MRI report. The claim is disallowed for DISC DEGENERATION L1-2, L3-4, L4-5 AND L5-S1; CYST LIKE LESION OVER THE RIGHT NEURAL CANAL AT L5-S1; and SYNOVIAL CYST OF LEFT L4-5 FACET JOINT. The disallowances are made in reliance on the addendum report of Dr. Schmutz.
 All relevant evidence on the issues of the requested additional allowances has been reviewed and considered, including the 07/06/2004 report of H. Steven Baer, D.C., obtained by the employer.
 The employer has raised several defenses to the payment of temporary total disability compensation.
 The employer maintains that the injured worker voluntarily abandoned her former position of employment when she was discharged for cause; however, they make no showing she was discharged for violation of a written work rule which she knew or should have known would result in discharge as required by State, ex rel. Louisiana Pacific v. Indus. Comm. (1995), 72 Ohio St.3d 401.
 The employer also maintains the injured worker was offered light duty within her physical limitations; however, the offer was not in writing as required by OAC 4121-3-32(A)(7).
 The employer also is critical of the medical evidence submitted in support of temporary total disability. The conditions listed on the C-84s as disabling are limited to the two soft tissue conditions which are now nearly 3 ½ years old. The independent medical examiner concludes these two conditions have reached maximum medical improvement. The employer argues that since the C-84s only list two longstanding soft tissue injuries and the most credible medical evidence is that these conditions have reached maximum medical improvement, temporary total disability compensation is not properly payable. The Deputy does not find this argument to be well-taken. All of the physicians who have offered an opinion on this subject agree the injured worker is unable to return to her former position of employment, and that the conditions which are additionally allowed by this order have not reached maximum medical improvement. Even if the lumbar and cervical sprains have resolved, as the employer maintains, denial of temporary total disability compensation on medical grounds is not indicated under these facts.
 Additionally, the employer argues that Dr. Graneto cannot validly support an opinion of temporary total disability prior to the 02/05/2004 examination listed on the 02/05/2004 C-84. Given the extensive treatment Dr. Graneto had rendered the injured worker in the period leading up to that examination, discussed above, and in Dr. Schmutz'[s] report, the Deputy finds Dr[.] Graneto had adequate contact with the injured worker to offer an opinion as to the injured worker's disability from 01/01/2003 through 02/04/2004.
 Lastly, the employer maintains that payment of temporary total disability prior to 02/01/2004 is precluded by the injured worker's receipt of wage continuation through and including 02/01/2004. This argument is held well-taken.
 In light of all of the above, payment of temporary total disability compensation is denied for the period of 01/01/2004 through 02/01/2004 for the reason the injured worker received wage continuation over this period. The injured worker is awarded temporary total disability compensation for the period 02/02/2004 through 06/09/2004 (the ending date of the award made by the Staff Hearing Officer order dated 09/27/2004), to continue consistent with medical evidence of continuing temporary total disability due to allowed conditions. The award of temporary total disability compensation is made in reliance upon the 02/05/2004, 05/18/2004, 06/25/2004 and 09/28/2004 C-84s from Dr. Graneto.
(Emphasis sic.)
 {¶ 58} 28. On January 11, 2005, relator moved for reconsideration of the commission-approved deputy's order of December 10, 2004.
 {¶ 59} 29. On February 3, 2005, the commission mailed an interlocutory order stating:
 It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
 Specifically, it is alleged that the injured worker refused an offer of suitable employment.
 Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 01/11/2005 is to be set for hearing to determine if the alleged mistate [sic] of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues.
 This order is issued pursuant to State ex rel. Nicholls v. Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 60} 30. Following a March 29, 2005 hearing before the commission, the commission mailed an order on April 21, 2005 stating:
 * * * [I]t is the decision of the Industrial Commission that the employer's request for reconsideration, filed 01/11/2005, is denied and that the order of the Deputy, dated 12/01/2004, remains in full force and effect.
 It is the finding of the Industrial Commission that it does not have the authority to invoke continuing jurisdiction pursuant to R.C. 4123.52
and State ex rel. Nicholls v. Indus. Comm.
(1998), 81 Ohio st.3d 454, and State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320. The employer has failed to meet its burden of proving that the Deputy order, dated 12/01/2004, contains a clear mistake of fact, or a clear mistake of law of such character that remedial action would clearly follow. Therefore, the employer's request for reconsideration, filed 01/11/2005, is denied and the order of the Deputy, dated 12/01/2004, remains in full force and effect.
 {¶ 61} 31. On October 28, 2005, relator, Summitville Tiles, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 62} Several issues are presented: (1) whether the commission abused its discretion in determining that relator failed to show that claimant had voluntarily abandoned her employment with relator; (2) whether the commission abused its discretion in refusing to find that claimant had refused a written job offer of suitable employment; (3) whether the commission's failure to make a finding as to maximum medical improvement ("MMI") permits it to rely upon Dr. Graneto's C-84s certifying TTD based upon the neck and lumbar sprains; and (4) whether the commission abused its discretion in denying relator's request for reconsideration of the deputy's order of December 1, 2004.
 {¶ 63} The magistrate finds: (1) the commission did not abuse its discretion in determining that relator failed to show that claimant had voluntarily abandoned her employment with relator; (2) the commission did not abuse its discretion in refusing to find that claimant had refused a written job offer of suitable employment; (3) the commission's failure to make a finding on MMI does not permit it to rely upon Dr. Graneto's C-84s to support an award of TTD compensation beginning February 2, 2004; and (4) the commission did not abuse its discretion in denying relator's request for reconsideration of the deputy's order.
 {¶ 64} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 65} The first two issues are interrelated and will be addressed together.
 {¶ 66} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when work within the physical capabilities of the employee is made available by the employer."
 {¶ 67} Supplementing the statute, Ohio Adm. Code 4121-3-32(A) provides the following definitions:
 (3) "Suitable employment" means work which is within the injured worker's physical capabilities.
 * * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence. * * *
 {¶ 68} Ohio Adm. Code 4121-3-32(B)(2) provides that TTD compensation may be terminated after a hearing:
 (d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 69} In State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.
(2000), 90 Ohio St.3d 428, the employer's job offer misstated the restrictions of the claimant's treating physician, Dr. Steele, who had authorized the claimant's return to light duty work. The Coxson court issued a writ of mandamus ordering the commission to vacate its determination that "claimant refused a legitimate light duty offer of employment." Id. at 431.
 {¶ 70} The Coxson court rejected the employer's contention that the job offer was sufficient because the employer had promised to "work with the physician to modify jobs within given restrictions or limitations." Id. at 433. The Coxson court explained:
 * * * The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions.
Id. at 433.
 {¶ 71} Both this court and the Supreme Court of Ohio have summarizedCoxson's holding.
 {¶ 72} In State ex rel. Professional Restaffing of Ohio, Inc. v.Indus. Comm., Franklin App. No. 02AP-696, 2003-Ohio-1453, this court states:
 * * * Under Coxson, the offer of suitable employment must identify the position offered and generally describe the duties required so that a claimant, his or her physician, and/or the commission can determine whether the required duties are consistent with the medical restrictions. * * *
 {¶ 73} Recently, in State ex rel. Ganu v. Willow Brook ChristianCommunities, 108 Ohio St.3d 296, 2006-Ohio-907 at ¶ 41, the court stated:
 * * * Coxson held that a written offer of suitable employment must clearly identify the physical demands of the job and, moreover, that an offer lacking the requisite clarity could not be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored.
 {¶ 74} Here, the deputy's order of December 1, 2004, rejects relator's claim of a written job offer of suitable employment with the statement that the offer "was not in writing as required by OAC 4121-3-32(A)(7)." However, the deputy's brief explanation fails to adequately address the problem with relator's job offer.
 {¶ 75} Mr. Johnson's January 27, 2004 letter to relator informed claimant that relator "will accommodate the restrictions noted in the report" of Dr. Hirsch and that she was to report for work on February 2, 2004. Mr. Johnson's January 27, 2004 letter fails to meetCoxson's requirement that the employer clearly identified the physical demands of the job.
 {¶ 76} Not until his February 13, 2004 letter did Mr. Johnson inform claimant that she was being offered employment as a "Trim Selector" and that she was to report to work on February 16, 2004. As previously noted, by letter dated February 17, 2004, claimant's employment was terminated.
 {¶ 77} The deputy's order does not explain why the "Trim Selector" offer fails to meet Coxson's requirement that the employer clearly identify the physical demands of the job. However, the deputy's failure to do so is not fatal to the deputy's order.
 {¶ 78} Relator's job offer suffers from a more fundamental problem than any alleged failure to clearly identify the physical demands of the job being offered. The job offer was at best only a response to the physical restrictions relating to the "bilateral carpal tunnel syndrome" in claim number 03-81097. The job offer, as set forth in Mr. Johnson's letter of February 13, 2004, simply ignores the undisputed fact that, by that date, Dr. Graneto had certified claimant's inability to return to work based upon the neck and lumbar sprains allowed in claim number 01-416338.
 {¶ 79} Claimant moved for TTD compensation in claim number 01-416338 and was ultimately awarded TTD compensation in that claim effective February 2, 2004. Thus, relator cannot logically claim that its job offer relating to the claim for bilateral carpal tunnel syndrome was a good faith offer of suitable employment barring compensation in the claim for neck and lumbar sprains.
 {¶ 80} Given that relator's job offer was fundamentally and fatally flawed, as analyzed above, relator's claim for a voluntary abandonment of employment must also fail.
 {¶ 81} A voluntary departure from employment precludes receipt of TTD compensation. An involuntary departure does not. In State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] and Watts [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 82} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, 561, the court held that the rule or policy supporting an employer's voluntary abandonment claim must be written. The court explained:
 Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
 The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
(Emphasis sic.)
 {¶ 83} In his February 17, 2004 letter terminating claimant's employment, Mr. Johnson cites to the Employee Handbook for Hourly Employees and particularly to paragraph 5 under the caption "Loss of Service Credit." The handbook states:
 Service will be broken and you will be removed from the payroll by:
 * * *
 5. Failure to return to work on your first scheduled workday following a vacation, a leave of absence (personal, medical, or work related) or a lay off unless satisfactory evidence is presented to the Company as to why you could not return on the first scheduled work day. In the case of recall, you may, on the day you receive our recall request, be granted a period of five (5) consecutive work days as a notice to another employer.
 {¶ 84} The record indicates that claimant acknowledged receipt of the employee handbook on July 5, 2000.
 {¶ 85} The deputy's order of December 1, 2004, addresses the voluntary abandonment issue as follows:
 The employer maintains that the injured worker voluntarily abandoned her former position of employment when she was discharged for cause; however, they make no showing she was discharged for violation of a written work rule which she knew or should have known would result in discharge as required by State, ex rel. Louisiana Pacific v. Indus. Comm. (1995), 72 Ohio St.3d 401.
 {¶ 86} While the deputy's explanation for rejecting relator's voluntary abandonment claim lacks clarity, there is clearly no evidence upon which the commission could have found a voluntary abandonment based upon a violation of the written work rule cited by relator.
 {¶ 87} Relator's theory of voluntary abandonment would in effect require claimant to ignore the restrictions set forth by his treating chiropractor, Dr. Graneto, in the C-84s of record. As previously noted, as early as a C-84 dated February 5, 2004, Dr. Graneto certified a period of TTD beginning January 1, 2004 to an estimated return-to-work date of March 15, 2004. In effect, relator's theory of a voluntary abandonment asks the commission and this court to focus exclusively upon the claim for bilateral carpal tunnel syndrome and to ignore the claim for the neck and lumbar sprains.
 {¶ 88} Relator fired claimant for claimant's failure to report to work in response to a job offer addressing exclusively the alleged restrictions in claim number 03-81097. In so doing, relator simply ignored the fact that Dr. Graneto certified an inability to return to any work in claim number 01-416332. Under such circumstances, relator failed to present any evidence of a voluntary abandonment upon which the commission could have found in relator's favor.
 {¶ 89} The third issue, as previously noted, is whether the commission's failure to make a finding on MMI permits it to rely upon Dr. Graneto's C-84s certifying TTD based upon the neck and lumbar sprains.
 {¶ 90} According to relator, because Dr. Schmutz found that the then allowed conditions in claim number 01-416338, i.e., sprain of neck and sprain lumbar region, were at MMI, Dr. Graneto's certification of TTD based exclusively on those allowed conditions cannot support a TTD award. However, the deputy's order falls short of actually finding that those allowed conditions are at MMI. At this point, it is perhaps worth repeating the relevant portion of the deputy's order that addresses the medical issues relating to TTD:
 The employer also is critical of the medical evidence submitted in support of temporary total disability. The conditions listed on the C-84s as disabling are limited to the two soft tissue conditions which are now nearly 3 ½ years old. The independent medical examiner concludes these two conditions have reached maximum medical improvement. The employer argues that since the C-84s only list two longstanding soft tissue injuries and the most credible medical evidence is that these conditions have reached maximum medical improvement, temporary total disability compensation is not properly payable. The Deputy does not find this argument to be well-taken. All of the physicians who have offered an opinion on this subject agree the injured worker is unable to return to her former position of employment, and that the conditions which are additionally allowed by this order have not reached maximum medical improvement. Even if the lumbar and cervical sprains have resolved, as the employer maintains, denial of temporary total disability compensation on medical grounds is not indicated under these facts.
 {¶ 91} Significantly, the issue before the deputy arose upon claimant's motion for a TTD award. As a defense to the TTD claim, relator apparently asserted that the allowed conditions were at MMI based upon Dr. Schmutz's report. However, the deputy never made a finding of MMI based upon Dr. Schmutz's report. Instead, the deputy stated that the TTD award would be granted even if the lumbar and cervical sprains have resolved.
 {¶ 92} Clearly, if the lumbar and cervical sprains have resolved and are viewed as at MMI based upon Dr. Schmutz's report, then Dr. Graneto's C-84s cannot support a TTD award. Thus, the deputy's order discloses that the deputy's decision was premised upon a clear mistake of law, i.e., that TTD could be premised upon the newly allowed conditions that Dr. Graneto never identified in his C-84s. Accordingly, the commission's award of TTD compensation beginning February 2, 2004, constitutes an abuse of discretion.
 {¶ 93} The above scenario presents the question of whether the deputy was required to render a finding as to whether the cervical and lumbar sprains were at MMI. In the magistrate's view, the deputy was required to make that determination because relator raised MMI as a defense to claimant's motion for TTD. Thus, the deputy's failure to address MMI, by way of a finding, constitutes an abuse of discretion.
 {¶ 94} Given the above analysis, a writ of mandamus must issue compelling the commission to vacate its TTD award, and in a new order, render a finding on MMI and adjudicate the TTD issue in a manner consistent with this magistrate's decision.
 {¶ 95} As previously noted, the fourth issue is whether the commission abused its discretion in denying relator's request for reconsideration of the deputy's order of February 1, 2004.
 {¶ 96} The commission's February 3, 2005 interlocutory order initially granted a reconsideration hearing on the issue of claimant's alleged refusal of an offer of suitable employment. Following the March 29, 2005 commission reconsideration hearing, the commission issued an order finding that it lacked continuing jurisdiction over the matter. Given that the deputy's order does not present aclear mistake of fact or a clear mistake of law with respect to the job offer issue, obviously, the commission did not abuse its discretion by denying relator's motion for reconsideration.
 {¶ 97} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate that portion of its deputy's order of December 1, 2004, that adjudicates the medical issues relating to TTD, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates claimant's motion for TTD compensation.
[1] Since the matter was referred to a magistrate of this court, the Local Rules of the Tenth District Court of Appeals and Civ.R. 53 were amended, effective May 1, 2006, and July 1, 2006, respectively.