DECISION
{¶ 1} Clarence Scott filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order which denied him temporary total disability ("TTD") compensation. *Page 2 
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated to the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision (attached as Appendix A) which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we grant the requested relief.
 {¶ 3} Counsel for Ryder Truck Rental, Inc. ("Ryder"), Clarence Scott's employer, has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} In March 2007, Clarence Scott was working for Ryder as a truck driver when he fractured the small toe on his right foot. He was not able to drive for awhile, but was cleared by his treating physician for sedentary work with restrictions.
 {¶ 5} On April 11, 2007, Ryder sent a letter to Scott stating that he had been released to the Return to Work Program. The letter indicated that Scott would receive a "transitional work position" which was subject to modification as Scott's medical condition changed. Scott was directed to report to work the next day. Scott did not report to work the next day.
 {¶ 6} On May 23, 2007, Scott filed a motion requesting TTD compensation. The motion was denied by both a district hearing officer ("DHO") and a staff hearing officer ("SHO") based upon Ryder's offer of a light duty position and Scott's failure to accept it. Scott's administrative appeal was refused, resulting in the filing of this action in mandamus.
 {¶ 7} The issue in this case is whether or not Ryder complied with the requirements of State ex rel. Coxson v. Dairy Mart Stores of Ohio,Inc. (2000), *Page 3 90 Ohio St.3d 428. Coxson requires that a specific position be offered and the duties of the position be identified.
 {¶ 8} Ryder clearly provided no written job offer which complies withCoxson. In its objections, Ryder argues otherwise, but an offer of an unspecified "transitional work position" which "meets the restrictions outlined by your medical provider" does not meet either requirement ofCoxson.
 {¶ 9} The first and fourth objections filed on behalf of Ryder are overruled.
 {¶ 10} Next, Ryder argues that it made a sufficient oral job offer, but had no obligation to turn the oral offer into a written document.
 {¶ 11} Ohio Adm. Code 4121-3-32(A)(6) defines "job offer" as follows:
 "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
 {¶ 12} Under this definition, Ryder did not make a job offer. The treating physician does not decide whether the injured worker will accept an offer of employment. The injured worker makes that decision and the employer needs to communicate the job offer to the injured worker, not rely on the treating physician or the physician's staff to interpret the job offer for the worker.
 {¶ 13} The second objection is overruled. *Page 4 
 {¶ 14} In the third objection, Ryder argues that the magistrate failed to apply Ohio Adm. Code 4121-3-32(B)(1)(b). Ohio Adm. Code 121-3-32(B)(1)(b) allows a self-insured employer to terminate TTD compensation when the injured workers' treating physician certifies that the workers can return to his or her former position of employment. That never occurred here.
 {¶ 15} Ohio Adm. Code 4121-3-32(B) also allows TTD compensation to be determined if the treating physician finds the employer is capable of returning to other available suitable employment. Ohio Adm. Code 121-3-32(B) must be read in conjunction with Ohio Adm. Code 121-3-32(A), which requires a written job offer or an oral job offer of suitable employment which is subsequently reduced to writing before terminating TTD compensation. Further, no job offer which corresponds to the requirement of the Coxson case was made.
 {¶ 16} The word "suitable" in Ohio Adm. Code 4121-3-32(B) does not mean "suitable to the employer." To be suitable, the offer must be suitable from an objective point of view. The whole point of the Coxson case is to assure that the actual job offer is known, with its specifications and medical demands. The courts are then in a position to determine if the employer's job offer is an offer of truly suitable employment. By failing to comply with Coxson and Ohio Adm. Code 4121-3-32(A), Ryder failed to offer suitable employment for purposes of Ohio Adm. Code 121-3-32(B).
 {¶ 17} The third objection is overruled.
 {¶ 18} All four objections having been overruled, we adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we grant a writ of mandamus compelling the commission to vacate its orders denying TTD compensation *Page 5 
and compelling the commission to adjudicate Clarence Scott's entitlement to TTD compensation irrespective of Ryder's alleged offer or offers of alternative employment.
Objections overruled; writ of mandamus granted.
PETREE and T. BRYANT, JJ., concur.
BRYANT, J., retired of the Third Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION {¶ 19} In this original action, relator, Clarence Scott, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 7 
vacate its order denying him temporary total disability ("TTD") compensation beginning April 12, 2007, on grounds that he refused a written job offer of suitable employment, and to enter an order finding that the job offer failed to meet the specificity requirements ofState ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc. (2000),90 Ohio St.3d 428, and adjudicating the merits of his request for TTD compensation.
Findings of Fact: {¶ 20} 1. On March 29, 2007, relator sustained an industrial injury while employed as a truck driver for respondent Ryder Truck Rental, Inc. ("Ryder"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "right small toe fracture" and is assigned claim number 07-822075.
 {¶ 21} 2. On April 2, 2007, relator initially presented to David B. Kay, M.D., for treatment. Dr. Kay wrote:
 * * * He has obvious swelling and ecchymosis present to his foot. * * *
 RADIOGRAPHIC STUDIES: Review of radiographs again demonstrates a nondisplaced transverse fracture, proximal phalanx base. No other fractures are evident.
 IMPRESSION: Fracture to the small toe and contusion with crush injury to his right foot.
 RECOMMENDATION: Recommendation is compression bandage, weight-bearing to tolerance and buddy taping to the 4th and 5th toe, reassessment in 10 days. I am not sure if he [is] going to be able to return to work at that time. It is really going to be dependent upon somewhat of his contusion. Back in 10 days for reassessment.
 {¶ 22} 3. On April 9, 2007, Dr. Kay completed a C-84 certifying TTD from April 2, 2007 to an estimated return-to-work date of April 19, 2007. *Page 8 
 {¶ 23} 4. On April 11, 2007, relator returned to Dr. Kay, who wrote:
 He seems very concerned that his employer contacted me and stated that they had a sedentary position for him.
 * * *
 * * * We are going to continue with the buddy taping with the small toe. We will see him back after the MRI but in the meantime he can return to work in a sedentary position regardless if this is his job position.
 PLAN/TREATMENT: Plan is to see him back after the MR[I] and again I made it very clear that he can return to work with the work restrictions that have been set up for him.
 {¶ 24} 5. Also on April 11, 2007, Dr. Kay completed a "Physician's Report of Work Ability" form whereon he indicated that relator could return to work with restrictions beginning April 12, 2007. On the form, Dr. Kay wrote: "Sedentary work only."
 {¶ 25} 6. The record contains a letter dated April 11, 2007, addressed to relator. The letter is unsigned, but contains signature lines for relator and T.H. Streeter, Ryder's logistics manager. The letter states:
 On March 29, 2007, you sustained an on-the[-]job injury. We are pleased that you have sufficiently recovered to be released to the Return To Work program. You will be provided a transitional work position on April 12, 2007. This assignment meets the restrictions outlined by your medical provider. The position is temporary and subject to modification as determined by your medical provider in accordance with your recovery progress until you are released to resume your fully duty position.
 You are to report to Mark Wheland at 8:00 a.m. on Thursday[,] April 12, 2007 at our terminal. Your scheduled work hours and work days will be from 8:00 a.m. until 4:00 p.m. Monday thru Friday. Your pay rate will be $10.00 per hour for all hours worked during your transitional work assignment. Failure to participate in the Return To Work program may affect your eligibility for continued benefits. *Page 9 
Please contact me immediately if you have any questions. Please sign, date, and return this letter prior to your starting time of your scheduled return to work.
The April 11, 2007 letter itself fails to indicate how it was sent to relator.
 {¶ 26} 7. The record contains another letter dated April 12, 2007 addressed to relator. The April 12, 2007 letter indicates that it was sent certified mail. The April 12, 2007 letter contains a signature block for Mr. Streeter. The letter states:
 As of today, you have not reported to work, nor have you contacted me to indicate that you would not be returning as scheduled on April 12, 2007.
 I have left you two telephone messages and you have not returned my calls. Failure to respond within seven (7) business days from the date of this letter, may affect your eligibility for continued benefits.
 {¶ 27} 8. The record contains a United States Postal Service certified mail receipt dated April 12, 2007. There is no such receipt dated April 11, 2007.
 {¶ 28} 9. The record contains another letter dated April 12, 2007 addressed to relator. The letter does not indicate how it was sent. The letter is signed by Cheryl Icard, Ryder's senior workers' compensation representative:
 Please be advised that I have tried to reach you several times at both your home number, * * * and your cell number[.] * * * I have left messages for a return call to discuss your Workers' Compensation, right foot contusion and small toe fracture. To date, I have not heard from you.
 Because of this injury, your authorized physician, Dr. Kay, has released you to return to work in a sedentary position, which I understand has been made available to you.
 {¶ 29} The Icard letter further indicates enclosure of a check for payment of TTD compensation for April 9, 10, and 11, 2007. *Page 10 
 {¶ 30} 10. On April 23, 2007, relator returned to Dr. Kay, who wrote:
 IMPRESSION: He needs physiotherapy in order to get this foot rehabilitated.
 * * * He should be able to start wearing some shoes relatively soon and once again I see no reason why he cannot return in a pure[ly] sedentary fashion even though he states very clearly that his job is a truck driver and "the only job that he will do is work as a truck driver." I suggested that he take these issues up with his employer.
 {¶ 31} 11. The record contains a letter dated April 23, 2007 from relator to Ryder. In the letter, relator indicates his receipt of a letter sent by Ryder by certified mail. However, the letter relator received is not further identified. Relator also indicates "some confusion with the delivery to my home."
 {¶ 32} 12. On May 23, 2007, relator moved for the payment of TTD compensation.
 {¶ 33} 13. On July 10, 2007, at Ryder's request, relator was examined by Kiva Shtull, M.D. Dr. Shtull opined that relator "is capable of returning to the position of employed [sic] which he held on the date of injury of this claim without the need for any work restrictions or modifications."
 {¶ 34} 14. Following a July 17, 2007 hearing, a district hearing officer ("DHO") issued an order denying TTD compensation beginning April 12, 2007, on grounds that relator refused Ryder's light-duty job offer. The DHO's order explains:
 It is the finding of the Hearing Officer that the testimony adduced at hearing and the office note dated 4/11/07 from the treating physician Dr. Kay indicate that the injured worker was able to return to work with restrictions effective 4/12/07. Mr. Streeter from the employer testified that he had a telephone conversation with Dr. Kay on 4/11/07 prior to the injured worker's appointment on that date. Mr. Streeter *Page 11 
indicated that a light-duty position was available to the injured worker wherein his job duties would only include answering telephones. Dr. Kay indicated that the injured worker would be able to perform those job duties effective 4/12/07. On that same date after the injured worker's appointment with Dr. Kay[,] Mr. Streeter testified that he had a conversation with Dr. Kay's nurse. Dr. Kay's nurse stated that when the light-duty position was discussed with the injured worker he stated that he was not a secretary and would return to work only as a truck driver.
 Throughout the remaining office notes in April including 4/23/07 and the MEDCO-14 provides restrictions commencing 4/12/07 which were consistent with the job position and duties discussed with the physician of record.
 It is ordered that temporary total disability compensation for the period 4/12/07 through 5/1/07 is denied. * * *
 This order is based on the opinion of Dr. Kay in his office notes dated 4/11/07, the testimony of Mr. Streeter at today's hearing and the letter dated 4/11/07 to the injured worker from Mr. Streeter.
 {¶ 35} 15. Relator administratively appealed the DHO's order of July 17, 2007.
 {¶ 36} 16. On August 28, 2007, Belinda Jordan, Ryder's human resources manager, executed an affidavit stating:
 That on April 24, 2007, she contacted Clarence Scott at the request of the Terminal Manager, Thomas Streeter, to determine his medical and return-to-work status and that the Claimant advised her he was not hired to be a "secretary in the office" and that he expressed concerns that the terminal manager would not let him leave work for his therapy appointments. The Claimant was advised that he would be allowed to leave for his therapy sessions, but he also advised he would not return to the light-duty position because he was required to frequently soak his foot and he did not wish to do so in front of his co-workers. *Page 12 
 {¶ 37} 17. Following an August 29, 2007 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order and denying relator's motion. The SHO's order explains:
 * * * [I]t is the order of the Staff Hearing Officer that temporary total compensation is specifically denied from 04/12/2007 through 05/01/2007.
 This order is based on Dr. Kay's treatment note dated 04/11/2007, report dated 04/23/2007, and the letter dated 04/11/2007 from Mr. Streeter, terminal manager.
 The Hearing Officer finds the employer provided a valid light duty job offer in writing to the claimant, consistent with Dr. Kay's recommendation. The claimant failed to report for this light duty job and refused said light duty job offer.
 This order is based on the affidavit of Ms. Jordan, dated 08/28/2007, letter from Mr. Streeter, and treatment records from Dr. Kay.
 All evidence was read and evaluated, however this order is based on Mr. Streeter's 04/11/2007 letter and the treatment records of Dr. Kay.
 {¶ 38} 18. On September 21, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 29, 2007.
 {¶ 39} 19. On December 13, 2007, relator, Clarence Scott, filed this mandamus action.
Conclusions of Law: {¶ 40} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below. *Page 13 
 {¶ 41} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when work within the physical capabilities of the employee is made available by the employer."
 {¶ 42} Supplementing the statute, Ohio Adm. Code 4121-3-32(A) provides the following definitions:
 (3) "Suitable employment" means work which is within the employee's physical capabilities.
 * * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
 {¶ 43} Ohio Adm. Code 4121-3-32(B)(2)(d) provides that TTD compensation may be terminated after hearing: "Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment."
 {¶ 44} In Coxson, the commission denied Marlyne Coxson her request for TTD compensation on grounds that she had refused her employer's offers of light-duty employment. The Coxson court held that the letters offering employment could not be considered offers of suitable employment because (1) the letters did not identify the position offered or describe its duties, and (2) some of the terms used by the employer in its letters were ambiguous or vague. *Page 14 
 {¶ 45} The Coxson court rejected the employer's position that any deficiency with the letters was cured by its written promise to "work with the physician to modify jobs within given restrictions or limitations." Id. at 433. The Coxson court stated:
 * * * The difficulty with accepting this argument is that it essentially legitimizes any job offer — no matter how inappropriate — under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions. Id.
 {¶ 46} In State ex rel. Professional Restaffing of Ohio, Inc. v.Indus. Comm., 152 Ohio App.3d 245, 2003-Ohio-1453, at ¶ 4, this court had occasion to apply the Coxson requirements. This court stated:
 Here, relator offered claimant a "left-handed position" without identifying the specific position or the duties required of that position. Although claimant's medical restrictions relate to the use of his right hand, the job offer extended by relator is not specific enough to allow claimant, his doctor, or the commission to assess whether the job is, in fact, within claimant's restrictions. As noted by Coxson, for a job offer to be sufficient to terminate TTD compensation, it must be clear that the job is indeed within claimant's restrictions. The only way to assess this is to know the position being offered and the general nature of the duties required of the position.
 {¶ 47} In State ex rel. Ganu v. Willow Brook ChristianCommunities, 108 Ohio St.3d 296, 2006-Ohio-907, the employer offered Gracie Ganu a light-duty job based upon the medical restrictions of Dr. Holzaepfel who examined Ganu at the request of the employer. Because Ganu did not accept the offer, the commission terminated TTD compensation on the employer's motion.
 {¶ 48} In Ganu, the court found that Dr. Holzaepfel's report could not properly form the basis for a good-faith job offer because he failed to consider all allowed *Page 15 
conditions. The court also found that the job offer failed to meet the specificity job requirements under Coxson.
 {¶ 49} The Ganu court summarizes the Coxson holding:
 * * * Coxson held that a written offer of suitable employment must clearly identify the physical demands of the job and, moreover, that an offer lacking the requisite clarity could not be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored.
Id. at ¶ 41.
 {¶ 50} At best, on April 11, 2007, Ryder made an oral job offer when Mr. Streeter called Dr. Kay who then told relator about the offer.
 {¶ 51} There is no evidence that relator received Ryder's April 11, 2007 letter before April 23, 2007, the date of relator's letter admitting receipt of a letter sent by certified mail. That is, there is no evidence that Ryder actually gave to relator a written job offer before April 23, 2007.
 {¶ 52} Ohio Adm. Code 4121-3-32(A)(6) is instructive. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate TTD compensation, the employer must give the injured worker a written job offer at least 48 hours prior to initiating proceedings.
 {¶ 53} Here, the July 17, 2007 proceedings before the DHO were initiated by relator's May 23, 2007 motion for payment of TTD compensation. Ryder did not file a motion because it was not paying TTD compensation. However, Ryder opposed relator's motion on grounds that a job offer had been refused.
 {¶ 54} There is really no dispute here that the written job offer contained in the April 11, 2007 letter fails to satisfy theCoxson specificity requirements. However, *Page 16 
Ryder contends that the commission can and did view the lack of specificity in light of all the other evidence showing that relator refused the oral job offer discussed with Dr. Kay on April 11, 2007.
 {¶ 55} Ryder fails to address here the impact of Ohio Adm. Code 121-3-32(A)(6)'s provision for an injured worker's refusal of an oral job offer. In effect, Ryder is inviting this court to ignore the rule as did the commission in the administrative proceedings under review before this court.
 {¶ 56} The dispositive issue before the commission was not whether relator was justified in refusing the oral job offer that Mr. Streeter conveyed to relator through Dr. Kay on April 11, 2007. However, that was the issue that the commission in effect addressed as being dispositive in its orders.
 {¶ 57} The commission erroneously failed to address the question of whether Ryder's written job offer met the Coxson specificity requirements. Had the commission done so, it would have had no choice but to conclude that Ryder's April 11, 2007 letter fails theCosxon specificity requirements. On that basis, the commission was required to enter a finding that relator had not received a written job offer of suitable employment under the rule, and to adjudicate the merits of relator's motion for TTD compensation.
 {¶ 58} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of August 29, 2007, and to enter an amended order consistent with this magistrate's decision that adjudicates relator's May 23, 2007 motion for TTD compensation. *Page 1